[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 3, 2004
THOMAS K. KAHN
CLERK

————————————————

No. 04-10490

————————————————

D.C. Docket No. 04-00067-CV-J-10HTS

JOHNNY ROBINSON,

Plaintiff-Appellant,

versus

JAMES V. CROSBY,
BRADLEY D. CARTER,
JOSEPH THOMPSON,
UNKNOWN EXECUTIONERS AT
FLORIDA STATE PRISON,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(February 3, 2004)**

Before: EDMONDSON, Chief Judge, CARNES and HULL, Circuit Judges.

PER CURIAM:

This § 1983 lawsuit is before this Court on Plaintiff Johnny L. Robinson's "Motion for a Temporary Restraining Order, Preliminary Injunction, and/or Stay of Execution Pending Appeal and Pending the Supreme Court's Decision in Nelson v. Campbell and Memorandum in Support Thereof."

Johnny L. Robinson ("Robinson") is a Florida inmate convicted of first-degree murder and sentenced to death. Defendants plan to carry out Robinson's death sentence through the intravenous lethal injection of certain drugs. On February 2, 2004, two days before his scheduled execution, Robinson filed a 42 U.S.C. § 1983 complaint in the United States District Court for the Middle District of Florida.

Robinson's § 1983 complaint contends that death by lethal injection causes unnecessary pain and suffering and therefore violates his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Robinson asserts that lethal injection causes those who are executed pain and suffering while they are paralyzed and unable to communicate. Robinson's § 1983 lawsuit seeks not only a temporary restraining order of his execution by lethal injection scheduled for February 4, 2004, at 6:00 p.m., but also an injunction to prevent entirely his execution by lethal injection. By order dated February 3, 2004, at

10:07 a.m., the district court dismissed Robinson's § 1983 complaint for lack of jurisdiction.

Later on February 3, 2004, Robinson filed in this Court (1) a "Notice of Appeal of Order Dismissing Action" and (2) a "Motion for a Temporary Restraining Order, Preliminary Injunction, and/or Stay of Execution Pending Appeal and Pending the Supreme Court's Decision in Nelson v. Campbell and Memorandum in Support Thereof." Robinson has not asked that his appeal be expedited, but rather seeks to enjoin his execution pending appeal. Robinson's Motion alleges that he has shown: (1) a substantial likelihood of success on the merits of his appeal of the district court's order dismissing his § 1983 lawsuit; (2) that the requested action is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the restraining order or injunction would inflict upon the non-movant; and (4) that the requested action would serve the public interest.[1]

We deny Robinson's Motion because the district court properly dismissed his § 1983 lawsuit and he has not shown a likelihood of success, much less a

---

[1]Plaintiff Robinson relies on the standard for a stay or an injunction in the § 1983 lawsuit context. Defendants argue that Robinson's § 1983 complaint should be treated as a successive habeas petition and that a stay of execution or injunction in a successive habeas case may be granted only "when there are 'substantial grounds' upon which relief might be granted." Bowersox v. Williams, 517 U.S. 345, 346 (1996) (other internal quotation marks and citations omitted). Robinson meets neither his nor the Defendants' tests, and thus we need not resolve this issue.

3

substantial likelihood of success, in his pending appeal of the district court's dismissal of his § 1983 lawsuit.[2] Further, as discussed herein, Robinson's § 1983 lawsuit does not raise the same claim as in Nelson v. Campbell, 347 F.3d 910 (11th Cir. 2003), cert. granted, 124 S. Ct. 835 (Dec. 1, 2003). Rather, Robinson's complaint raises claims like those in cases where the Supreme Court has denied stays of execution even after Nelson. See In re Roe, 2004 WL 189771 (U.S. Feb. 2, 2004) (stay denied); Vickers v. Johnson, 2004 WL 168080 (U.S. Jan. 28, 2004) (stay denied); Zimmerman v. Johnson, 124 S. Ct. 979 (Dec. 15, 2003) (stay denied); see also Beck v. Rowsey, 124 S. Ct. 980 (Jan. 8, 2004) (Supreme Court vacated stay entered by district court).

I. District Court Properly Dismissed Robinson's § 1983 Lawsuit

The procedural history of this case prior to this § 1983 lawsuit is set out in detail in Robinson v. Moore, 300 F.3d 1320 (11th Cir. 2002), and Robinson v. State, 2004 WL 170362 (Fla. S. Ct., Jan. 29, 2004). For purposes of this order, it is sufficient to note that Robinson previously filed a federal habeas petition under 28 U.S.C. § 2254, which alleged numerous claims of error. On August 8, 2002,

---

[2]We need not reach the other three requirements for a stay or an injunction because Robinson's Motion fails to satisfy the first requirement.

this Court affirmed the district court's denial of Robinson's § 2254 petition. Robinson v. Moore, 300 F.3d at 1353.

Because Robinson previously has filed a federal habeas petition, the district court in considering his § 1983 lawsuit, and now we on appeal, are confronted with the question of whether Robinson's § 1983 complaint constitutes the "functional equivalent" of a second or successive habeas petition, which would be subject to the requirements of 28 U.S.C. § 2244. Fugate v. Dep't of Corrs., 301 F.3d 1287, 1288 (11th Cir. 2002), cert. denied, 536 U.S. 980, 123 S. Ct. 15 (2002). Under 28 U.S.C. § 2244, before an applicant may file a second or successive habeas petition, he must apply for "an order authorizing the district court to consider the application" in the appropriate Court of Appeals. 28 U.S.C. § 2244(b)(3)(A). The district court determined that Robinson's § 1983 action was the functional equivalent of a successive habeas corpus proceeding and that the district court lacked jurisdiction to entertain a successive petition absent the permission of the Court of Appeals issued under 28 U.S.C. § 2244.

We conclude that the district court correctly dismissed Robinson's § 1983 complaint for lack of jurisdiction. A § 1983 claim seeking relief – including a TRO, preliminary injunction, or a stay of execution – from a sentence of death as cruel and unusual punishment is the "functional equivalent" of a successive habeas

petition. <u>Fugate</u>, 301 F.3d at 1288, <u>cert. denied</u>, 536 U.S. 980, 123 S. Ct. 15 (2002); <u>Hill v. Hopper</u>, 112 F.3d 1088, 1089 (11th Cir. 1997), <u>cert. denied</u>, 520 U.S. 1203, 117 S. Ct. 1571 (1997); <u>Felker v. Turpin</u>, 101 F.3d 95, 96 (11th Cir. 1996), <u>cert. denied</u>, 519 U.S. 989, 117 S. Ct. 450 (1996). The district court lacked jurisdiction to consider Robinson's claim because he failed to apply to this Court for permission to file a successive habeas petition. <u>See</u> 28 U.S.C. § 2244(b)(3)(A). We further note that such an application to file a successive habeas petition would be due to be denied in any event. <u>See</u> <u>In re Provenzano</u>, 215 F.3d 1233, 1235-36 (11th Cir. 2000), <u>cert. denied</u>, 530 U.S. 1256, 120 S. Ct. 2710 (2000) (concluding that a claim that lethal injection constitutes cruel and unusual punishment does not meet the requirements of 28 U.S.C. § 2244(b)(2)(A) or (B)).

## II. <u>Nelson v. Campbell</u>

In his § 1983 complaint in the district court and in his current Motion before this Court, Robinson emphasizes the United States Supreme Court's recent grant of certiorari in <u>Nelson v. Campbell</u> and argues that we must stay his execution until <u>Nelson</u> is decided by the Supreme Court.[3] We disagree for two reasons.

---

[3] In <u>Nelson</u>, the Supreme Court granted certiorari on the following question: "Whether a complaint brought under 42 U.S.C. sec. 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the procedures for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?" 124 S. Ct. 835 (Dec. 1, 2004).

First, the grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law. See Ritter v. Thigpen, 828 F.2d 662, 665-66 (11th Cir. 1987); Thomas v. Wainwright, 788 F.2d 684, 688-89 (11th Cir. 1986); Bowden v. Kemp, 774 F.2d 1494, 1494 (11th Cir. 1985). Second, and more important, the Defendants point out that there are material factual and legal distinctions between Nelson and this case in any event.

In Nelson, the petitioner had severely compromised veins, and Alabama proposed to use a "cut-down" procedure to gain venous access preliminarily to the lethal injection. 347 F.3d at 911. Nelson claimed that this cut-down procedure, and not the lethal injection itself, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Id. Alabama's cut-down procedure "would require making a two inch incision in Nelson's upper arm for the purpose of locating a peripheral vein to perform a central line procedure." Id. at 911, n.1. In light of this circuit's precedent, the majority opinion in Nelson properly determined that Nelson's § 1983 claim was the functional equivalent of a second habeas petition and dismissed Nelson's § 1983 complaint because Nelson did not obtain this Court's permission to file a second habeas petition prior to filing in the district court as required by 28 U.S.C. 2244(b)(3)(A). 347 F. 3d at

7

912. The majority opinion also correctly concluded that even had Nelson sought court permission to file a second habeas petition, the facts alleged indicated that Nelson's application would have been denied for failure to meet the requirements of 28 U.S.C. 2244(b)(2). Id.

The dissent in Nelson stressed that petitioner Nelson was not challenging his execution by lethal injection and was not seeking to avoid lethal injection. Id. at 913-15 (Wilson, J., dissenting). Instead, Nelson "merely requests that a different, more humane procedure know as 'percutaneous central venous cannulation' be used to carry out his execution, rather than the outmoded and painful 'cut down' procedure." Id. at 915. The dissent continued that "[r]egardless of which procedure is used, Nelson will be executed by lethal injection in accordance with his sentence." Id. Accordingly, the dissent concluded that the "bottom line in this case is that the outcome of Nelson's petition has no effect on either his sentence or his conviction, and therefore cannot properly be construed under any circumstances as the equivalent to a subsequent habeas petition." Id.

In contrast, Robinson's § 1983 complaint does challenge his execution by lethal injection as violative of the Constitution and seeks to avoid entirely execution by lethal injection. Thus, whether this Court's decision about the cut-

8

down procedure in Nelson is affirmed or reversed, Robinson's § 1983 complaint will remain the functional equivalent of a successive habeas petition.

We recognize that paragraph 25 of Robinson's § 1983 complaint does contain this summary and speculative allegation: "The Plaintiff has severely compromised blood flow due to high blood pressure and hypertension. Plaintiff's condition increases the likelihood (a) that Defendants will mutilate Petitioner by performing a cut-down or central line, an invasive surgical procedure for which Defendants are not trained. . . ." In their response to the district court, the Defendants correctly pointed out that "[d]espite the hyperbole of Robinson's complaint, there is no indication that his veins are compromised in the same manner as Nelson's, nor is there any indication that either a cut-down procedure or a central line procedure will be necessary." The Defendants further emphasized that the cut-down procedure is necessary only when a suitable vein cannot be located. There is no factual basis and no proffered evidence to support the notion that Robinson's veins are compromised in any fashion or the speculation that any cut-down procedure may be necessary.[4]

---

[4]None of the affidavits filed by Robinson addresses the cut-down procedure. Instead, the affidavits discuss the drugs used in the lethal injection. Three affidavits that Robinson filed in the district court are copies of affidavits from the case of State of Texas v. Jesus Flores, No. 877994. These affidavits address the effects of the drugs used during lethal injection, how they each cause pain and suffering, and particularly how the pancuronium bromide chemical paralyzes the person and masks the pain and suffering being incurred.

9

Further, in the district court and now on appeal, the Defendants also properly point out that Robinson's lethal injection claim is essentially the same as in the cases of Kevin Zimmerman and Billy Frank Vickers, both of whom were executed by lethal injection following denials of stays of executions based upon substantially the same lethal injection claims as those contained in Robinson's § 1983 complaint.  See Vickers v. Johnson, 2004 WL 168080 (U.S. Jan. 28, 2004) (stay denied); Zimmerman v. Johnson, 124 S. Ct. 979 (Dec. 15, 2003) (stay denied); see also Beck v. Rowsey, 124 S. Ct. 980 (Jan. 8, 2004) (Supreme Court vacated stay entered by district court).[5]  The Defendants stress that the Supreme Court denied stays of execution in these cases even after Nelson.  On appeal, the Defendants also cite In re Roe, 2004 WL 189771 (U.S. Feb. 2, 2004), as an additional case where the defendant, like Robinson, challenged the drugs used in the lethal injection, but the Supreme Court denied a stay of execution even after Nelson.

We agree with the Defendants and conclude that Plaintiff Robinson's § 1983 complaint challenges and seeks to avoid his execution by lethal injection

---

The fourth affidavit is from the case of Abu-Ali Abdur' Rahman and discusses how the level of potassium chloride being used in the lethal injection context may not cause actual cardiac arrest but may result in death by suffocation due to lack of oxygen.

[5]As exhibits to their response in the district court, the Defendants filed pleadings from those cases.  We agree that Robinson's claims are like those cases and not like Nelson.

and therefore necessarily implicates the validity of his death sentence.  Heck v.

Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372-73 (1994).  Any alleged

claims about the cut-down procedure lack an evidentiary basis in this record.[6]

### III. CONCLUSION

For these reasons, the district court properly dismissed Robinson's § 1983

complaint for lack of jurisdiction.  Accordingly, this Court concludes that Plaintiff

Robinson has not shown a substantial likelihood of success in his appeal of the

district court's dismissal of his § 1983 lawsuit for lack of jurisdiction.  Therefore,

we deny Robinson's Motion for a stay of execution pending appeal and pending

Nelson.

---

[6]Regarding lethal injection, Robinson's § 1983 complaint also asserts that the Defendants have refused to certify that they will use drugs that have not expired and that an expired drug has insufficient potency to achieve the desire effect.  With their response, the Defendants filed a January 11, 2004,  affidavit of a Department of Corrections pharmacist who holds the position of Director of Pharmacy Services.  In that affidavit, the Director states that he has checked on the status of chemicals on hand for the execution of Robinson and verified that none of the chemicals on hand for the immediate execution on February 4, 2004 has reached or will reach its expiration date prior to or on February 4, 2004, or in the near future thereafter.  This January 11, 2004, affidavit was also filed in the recent state court habeas proceedings, which concluded prior to the filing of this current federal § 1983 complaint.  Robinson has proffered no evidence to support his allegation that the chemicals to be used may have expired.  Instead, the Defendants have proven otherwise.  Thus, we have focused on Robinson's other arguments that death by lethal injection inflicts cruel and unusual punishment.