[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 30, 2006
THOMAS K. KAHN
CLERK**

No. 06-10783

ARTHUR D. RUTHERFORD,

Plaintiff-Appellant,

versus

JAMES V. CROSBY, JR.,
CHARLIE CRIST,

Defendants-Appellees.

--------------------------
Appeal from the United States District Court for the
Northern District of Florida
--------------------------

**(January 30, 2006)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

This is the appeal of Arthur Dennis Rutherford, a Florida death row inmate, from the judgment of the district court dismissing his 42 U.S.C. § 1983 action challenging the details of that state's lethal injection procedures. (A copy of the district court's order is attached as an appendix to this opinion.) The district court

stated two independently adequate grounds for dismissal.

**I.**

The first ground on which the district court dismissed Rutherford's § 1983 complaint is that under our prior precedent a claim attacking the general procedures or protocols a state uses to carry out executions by lethal injection must be brought in a habeas corpus proceeding, and Rutherford had not obtained from this Court an order permitting him to file a second or successive petition. See 28 U.S.C. § 2244(b). That decision of the district court is correct as a matter of circuit law. See Hill v. Crosby, ___ F.3d ___, 2006 WL 163607 at *1 (11th Cir. Jan. 24, 2006), cert. granted, No. 05-8794, ___ U.S. ___, ___ S. Ct. ___, 2006 WL 171583 (Jan. 25, 2006) No. 05-8794; Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir. 2004).

Of course, circuit law certainly can be changed by a decision of the Supreme Court. See Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997); Cottrell v. Caldwell, 85 F.3d 1480, 1485 (11th Cir. 1996); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). A grant of certiorari, however, is not a decision and does not affect our obligation, or the obligation of district courts in this circuit, to follow prior decisions of this Court. See Robinson, 358 F.3d at 1284 ("[T]he grant of certiorari alone is not enough to change the law of this circuit or to justify this

2

Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law."); Ritter v. Thigpen, 828 F.2d 662, 665–66 (11th Cir. 1987) ("A grant of certiorari does not constitute new law."); Mulligan v. Kemp, 818 F.2d 746, 747–48 (11th Cir. 1987) (the grant of certiorari does not constitute a "decided case upon which to pass a new law claim"); Thomas v. Wainwright, 788 F.2d 684, 689 (11th Cir. 1986) ("any implications to be drawn [from a grant of certiorari in another case] may be discerned by application to the Supreme Court.") (citation omitted); Jones v. Smith, 786 F.2d 1011, 1012 (11th Cir. 1986) (same); Bowden v. Kemp, 774 F.2d 1494, 1495 (11th Cir. 1985) (same).  The district court was correct to dismiss the § 1983 complaint in this case on the basis of our decisions in the Hill and Robinson cases.   As required by our prior panel precedent rule, we affirm the district court's dismissal on that basis.

## II.

The district court also dismissed the complaint on the alternative basis that even if Rutherford's complaint states a cognizable claim under § 1983, he had delayed unnecessarily in bringing his claim about Florida's lethal injection procedures and thus was not entitled to injunctive relief in a last-minute § 1983 action.[1]  We review the dismissal on that basis only for an abuse of discretion.  See

---

[1] In the Hill case the district court and this Court treated Hill's § 1983 complaint solely as the functional equivalent of a successive habeas petition and dismissed it. Hill v. Crosby, ___ F. 3d

Kidder, Peabody & Co. v. Brandt, 131 F.3d 1001, 1003 (11th Cir. 1997) ("We review the district court's denial of injunctive relief under an abuse of discretion standard"); Sofarelli v. Pinellas County, 931 F.2d 718, 724 (11th Cir. 1991) ("The issuance or denial of injunctive relief [in a § 1983 lawsuit] is within the discretion of the district court and will not be disturbed absent an abuse of discretion or action contrary to equity."). The standard of review is not critical, however, because we would reach the same conclusion even on de novo review.

The district court concluded that Rutherford's unreasonable and unexcused delay in waiting until the eleventh hour to file the claim in a § 1983 lawsuit disentitled him from equitable relief, which is all the relief he was seeking. The law the district court applied in this part of its decision is discussed in Nelson v. Campbell, 541 U.S. 637, 124 S. Ct. 2117 (2004). There, the Supreme Court explained why its decision in that case would not "open the floodgates to all manner of method-of-execution challenges, as well as last minute stay requests." See Nelson, 541 U.S. at 649, 124 S. Ct. at 2125. In that explanation, the Court discussed its earlier decision in Gomez v. United States Dist. Court for N. Dist. of

___ (11th Cir. 2006). As discussed later, Rutherford's case is materially different from Hill's because both the district court, and now this Court have determined that even if Rutherford's challenge to the three-chemical process in lethal injection is cognizable in a § 1983 action, Rutherford's request for injunctive relief in this action is properly denied on equitable grounds because of unnecessary delay.

4

Cal., 503 U.S. 653, 112 S. Ct. 1652 (1992) (per curiam), which had vacated a stay

of execution entered by the federal appeals court in a § 1983 lawsuit challenging

the method of execution, even though the Court recognized that the claim may

have been cognizable under § 1983.  The reason the Supreme Court had concluded

that the death row inmate was not entitled to a stay of execution in Gomez is that

he had "waited until the 11th hour to file his challenge despite the fact that

California's method of execution had been in place for years."  Nelson, 541 U.S. at

649, 124 S. Ct. at 2126.

In reaching that conclusion in Gomez the Supreme Court emphasized the

State's strong interest in proceeding with its judgment and how a court may

consider the last-minute nature of a stay application:

> Whether his claim is framed as a habeas petition or as a § 1983 action,
> Harris seeks an equitable remedy.  Equity must take into consideration
> the State's strong interest in proceeding with its judgment and Harris'
> obvious attempt at manipulation.  This claim could have been brought
> more than a decade ago.  There is no good reason for this abusive
> delay, which has been compounded by last-minute attempts to
> manipulate the judicial process.  A court may consider the last-minute
> nature of an application to stay execution in deciding whether to grant
> equitable relief.

Gomez, 503 U.S. at 653-54, 112 S. Ct. at 1653 (emphasis added) (internal citations

omitted).  The Supreme Court reiterated those points in its Nelson opinion, quoting

with approval the key language from the Gomez opinion.  Nelson, 541 U.S. at 649,

5

124 S. Ct. at 2126. The Court went beyond what it had said earlier and instructed

lower courts that:

> A stay is an equitable remedy, and "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation." Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

Id. at 649–50, 124 S. Ct. at 2126 (quoting Gomez, 503 U.S. at 654, 112 S. Ct. at

1653) (internal citations and punctuation omitted) (alterations in original).[2]

The Supreme Court's teachings in Gomez and Nelson that lower courts

should apply equitable principles in this kind of § 1983 case have been heeded by a

number of courts faced with eleventh hour efforts of death row inmates to use §

---

[2] The wisdom behind a policy of discouraging to the extent reasonably possible last-minute filings in death sentence cases is illustrated in this case. Rutherford's attorneys waited until 7:00 p.m. ET on Friday, January 27, 2006 to file his § 1983 complaint in the district court. The district court ruled on it at 11:25 p.m. ET on Saturday, January 28. The notice of appeal was filed after midnight. Rutherford's application for a stay of execution and for an expedited appeal was not filed in this Court until 2:00 p.m. ET on January 29. We granted the motion to expedite this morning and at 9:05 a.m. ET the attorneys for Rutherford were notified of that fact and given until 2:00 p.m. ET to file any supplemental briefs they wished to file on the merits. In their supplemental brief they complain about not having more time to brief the issues which they brought to us on the Sunday afternoon before the scheduled execution on Tuesday. That situation, of course, is a product of their own delay in commencing this litigation.

1983 lawsuits to challenge lethal injection procedures and protocols. More specifically, as the district court did here, other circuits have concluded that even if a challenge to the three-chemical lethal injection procedure states a cognizable claim under § 1983, the petitioner is not entitled to a stay and/or injunctive relief if he delays until just before the scheduled execution the filing of a § 1983 action for equitable relief. White v. Johnson, 429 F.3d 572, 573-74 (5th Cir. 2005) (affirming the dismissal of White's § 1983 action for injunctive relief and emphasizing that White delayed until the eleventh hour to file his challenge to the state's lethal injection with the three chemicals in issue),[3] petition for stay of execution denied sub nom., White v. Livingston, __ U.S. __, 126 S.Ct. 601 (2005); Cooper v. Rimmer, 379 F.3d 1029, 1031-33 (9th Cir. 2004) (affirming the denial of last-minute equitable relief in § 1983 action challenging state's three-chemical protocol for execution by lethal injection); Harris v. Johnson, 376 F.3d 414, 416-18 (5th Cir. 2004) (concluding that petitioner was not entitled to equitable relief in § 1983 action challenging the state's three-chemical protocol for execution by lethal

---

[3] The Fifth Circuit in White also rejected White's argument that because he was not requesting just a stay but permanent injunctive relief in his § 1983 action, Nelson and Gomez therefore did not apply. White, 429 F.3d at 573-74. We agree with the Fifth Circuit that the last-minute rules of the Supreme Court in Nelson and Gomez "were declared by the Court in the context of last-minute § 1983 method of execution challenges as well as last-minute stay requests. The principles enunciated by the [Supreme] Court are equally applicable to all types of equitable relief, including permanent injunctions, sought by inmates facing imminent execution." Id. at 573-74 (internal citation omitted).

injection where he had unnecessarily delayed in bringing his claim); see also Bieghler v. Donahue, No. 1:06-cv-00136-LJM-TAB (S.D. Ind. Jan. 26, 2006) (relying on Nelson and denying TRO and preliminary injunction in plaintiff's last-minute § 1983 action challenging the state's three-chemical method of lethal injection and dismissing the § 1983 action), stay of execution granted, No. 06-1300 (7th Cir. Jan. 26, 2006) (unpublished order), stay of execution vacated, No. 05A684, ___ U.S. ___, ___ S. Ct. ___, 2006 WL 189970 (Jan. 27, 2006).

In each of those cited decisions the petitioner raised the same three-chemical challenge to the means of lethal injection that Rutherford has raised in this case. Of course, where petitioner's scheduled execution is imminent, there is no practical difference between denying a stay on equitable grounds and denying injunctive relief on equitable grounds in a § 1983 lawsuit.

The district court was fully justified in applying the Gomez/Nelson equitable principles to bar Rutherford's request for an injunction against his execution by lethal injection. Rutherford has been on Florida's death row for more than nineteen years. See Rutherford v. Crosby, 385 F.3d 1300, 1305 (11th Cir. 2004). The state enacted a lethal injection option statute six years ago. See Fla. Stat. § 922.105(1) (as amended by 2000 Fla. Sess. Law Serv. Ch. 00-2 (S.B. No. 10A § 2) (West)); see also Sims v. Florida, 754 So.2d 657, 663 n.11 (Fla. 2000). There has

8

been no suggestion that the lethal injection chemicals or procedures used by Florida have changed in the last six years, and Rutherford's complaint assumes that they have not. See Complaint at 7 n.2. The Lancet research letter upon which he bases his claim was published nine months before he filed his complaint. See L.G. Koniaris, M.D., et al., "Inadequate Anaesthesia in Lethal Injection for Execution," 365 The Lancet 1412 (Apr. 16, 2005). The Governor signed Rutherford's death warrant on November 29, 2005, setting the period from noon on January 30, 2006 through noon February 6, 2006 for the execution. The warden set the actual execution time as Tuesday, January 31, 2006, at 6:00 p.m. ET. Not until 7:12 p.m. ET on Friday, January 27, 2006, only two work days and four calendar days before the scheduled execution, did Rutherford file his § 1983 lawsuit claiming that the combination and amounts of chemicals Florida uses causes unnecessary pain in violation of the Eighth and Fourteenth Amendments.

The district court pointed out that Rutherford had offered no reason for his delay in bringing this action just days before his scheduled execution. In his filings with us, Rutherford argues that he was precluded from filing this lawsuit earlier by our Robinson decision, an excuse the dissenting opinion accepts. The obvious flaw in that argument is that, as we have already explained, the grant of certiorari in Hill has not affected the precedential value of Robinson. It is no less the law of

9

the circuit today than it was when we issued it. If Rutherford could file the lawsuit now, as he has, he could have filed it before.

If, as the dissenting opinion says, "not until the Supreme Court granted certiorari in Hill did Rutherford have reason to believe that, in this circuit, he might have a cognizable claim under § 1983," then Hill had no reason to believe that he might have a cognizable claim under § 1983, either. The dissent overlooks the fact that Hill did not have the benefit of the certiorari grant in Hill when Hill filed his lawsuit. Yet Hill filed the lawsuit without any grant of certiorari on the issue. Rutherford could have done exactly the same thing any time since Florida adopted lethal injection six years ago, and certainly any time since The Lancet research letter came out nine months ago. Instead, he chose to wait until the evening of the fourth calendar day before his execution.

In addition to affirming the district court's dismissal of Rutherford's § 1983 lawsuit on the basis of our Robinson and Hill decisions, we affirm it as well on the district court's alternative ground based on the Supreme Court's holding in Gomez and its instructions in Nelson about § 1983 claims that are filed after unreasonable delay.

**III.**

Rutherford has filed with us an application for a stay of execution pending resolution of this appeal. Because we are resolving this appeal by affirming the district court's dismissal of his § 1983 lawsuit, that application for stay will be denied.

Rutherford also has filed with us a separate application seeking a stay pending a decision by the Supreme Court in the Hill case. We also deny it for two reasons. First, even if the Supreme Court decides in the Hill case to overturn our Hill and Robinson decisions and holds that this type of claim is cognizable in a § 1983 proceeding, Rutherford still will not be entitled to any equitable relief because of the district court's independently adequate alternative ground for dismissing his complaint, which we are affirming in this opinion. Neither of the two questions on which certiorari was granted in Hill touch on that alternative ground.

Second, the Supreme Court is in a better position to decide whether it wants a stay of execution issued in this case than we are, and it has time to make a decision about a stay. All of the papers filed in the district court and in this Court throughout this proceeding have been contemporaneously lodged with the Supreme Court, and that Court will have our opinion within minutes of the time we issue it.

11

Our decision to let the Supreme Court decide whether it wants to issue a stay of execution in this case is informed by two considerations.

One of those considerations is what this Court has done when facing this same situation in the past. At least four times over the years we have been asked to issue a stay of execution based on a grant of certiorari in another case raising an issue identical to one that the movant was raising in the case before us, an issue foreclosed by existing circuit precedent that might be overruled by the Supreme Court. All four times we have declined to do so because the grant of certiorari does not change circuit precedent, and it makes more sense to let the Court that is going to be deciding the issue determine whether there should be a stay in another case raising it. Robinson v. Crosby, 358 F.3d at 1284 (declining to grant a stay pending the Supreme Court's decision in Nelson v. Campbell because "the grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law"); Thomas v. Wainwright, 788 F.2d at 689 (denying a stay even though certiorari had been granted in another case on the issue, because "[t]o date, the law in this Circuit, which has not been modified by Supreme Court decision, mandates a denial of relief to petitioner on this issue," and "any implications to be drawn [from the grant of certiorari in the other case] may be

12

discerned by application to the Supreme Court") (internal marks and citations omitted); <u>Jones v. Smith</u>, 786 F.2d at 1012 (same); <u>Bowden v. Kemp</u>, 774 F.2d at 1495 (same).[4]

The second consideration that informs our decision not to grant a stay of execution in this case pending the decision in <u>Hill</u> is what happened last week in the <u>Bieghler</u> case, a case raising issues remarkably similar to those in this one. The complaints in both cases raised the same Eighth Amendment issue based on the same alleged harmful effects of the same chemical sequence of sodium pentothal, pancuronium bromide, and potassium chloride used by Indiana and Florida to carry out executions by lethal injection. The complaints' descriptions of the nature and effects of each of the three chemicals are substantially similar. For example, Bieghler's complaint described sodium pentothal as "an ultrashort-acting barbiturate that begins to wear off almost immediately" and alleged that it is used "only in the induction phase of anaesthesia . . . so that the patient may re-awaken

---

[4] Our dissenting colleague relies on <u>Mobley v. Head</u>, 306 F.3d 1096 (11th Cir. 2002), for the proposition that a stay should be granted when the Supreme Court has granted certiorari in another case to decide a common issue. To the extent <u>Mobley</u> supports that position, it is inconsistent with the <u>Thomas</u>, <u>Jones</u>, and <u>Bowden</u> decisions which preceded it. Under the prior panel precedent rule it is absolutely clear that where decisions are inconsistent, the earlier decision (or in this instance the earlier three decisions) establish the law that must be followed. See <u>United States v. Hornaday</u>, 392 F.3d 1306, 1316 (11th Cir. 2004); <u>Hurth v. Mitchem</u>, 400 F.3d 857, 862 (11th Cir. 2005); <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1072 (11th Cir. 2000).

Although it attempts to distinguish <u>Robinson</u>, the dissenting opinion makes no effort to distinguish <u>Thomas</u>, <u>Jones</u>, and <u>Bowden</u>, and in fact they are indistinguishable.

13

and breathe on their own power if any complications arise in inserting a breathing tube pre-surgery." (Bieghler Compl. at 3-4.) Rutherford's complaint describes sodium pentothal as "an ultrashort-acting substance which produces shallow anesthesia" and alleges that it is used primarily "as an initial anesthetic in preparation for surgery while they set up a breathing tube in the patient." (Rutherford Compl. at 4.) The two complaints' descriptions of the other two chemicals are also materially identical. (Compare Bieghler Compl. at 3-5 with Rutherford Compl. at 5-6.)

Both complaints rely on the same research letter published in The Lancet, a medical journal. They both characterize the principal finding of the cited work as being that sodium pentothal levels in the blood of 21 of the 49 executed inmates indicated that those inmates had "consciousness during the execution," (Bieghler Compl. at 6), and were therefore able to feel "the suffering of suffocation from pancuronium bromide, and the burning of the veins followed by the heart attack caused by the potassium chloride." (Rutherford Compl. at 6-7).

On January 26, 2006, Bieghler filed a last-minute § 1983 claim seeking a injunctive relief and a stay of execution, which the district court denied on the same day. Bieghler v. Donahue, No. 1:06-CV-0136-LJM-TAB (Jan. 26, 2006). The reason for the denial was that Bieghler had delayed unnecessarily the filing of

14

his § 1983 claim. Id. The Seventh Circuit granted a stay of execution later that day. See Bieghler v. Donahue, No. 06-1300 (7th Cir. Jan. 26, 2006). The reason the Seventh Circuit granted the stay was the Supreme Court's grant of certiorari in Hill v. Crosby, No. 05-8794, __ U.S. __, __ S.Ct. __, 2006 WL 171583 (Jan. 25, 2006). Upon the State of Indiana's motion, the Supreme Court vacated the stay the Seventh Circuit had issued. Donahue v. Bieghler, No. 05A684, __ U.S. __, __ S.Ct. __, 2006 WL 189970 (Jan. 27, 2006).

The dissenting opinion in this case attempts to distinguish the Bieghler case on the ground that the state in that case offered to alter the dosages of the drugs used, an offer Beighler refused. That is an interesting fact, but not one that had anything to do with the district court's denial of injunctive relief and dismissal of the § 1983 lawsuit. The district court decision in that case makes clear that it was grounded solely on Beighler's unreasonable delay in seeking relief, not on his refusal to help the state execute him in a constitutional manner. Citing the unreasonable delay decision in White v. Johnson, the Bieghler court explained: "Bieghler has delayed unnecessarily in seeking relief. The equities now lie with the ability of the State of Indiana to execute the sentence Bieghler received and which has withstood decades of review." Bieghler v. Donahue, No. 1:06-CV-0136-LJM-TAB at 3 (Jan. 26, 2006).

15

The district court in this case, like the district court in the Bieghler case, denied relief on the Gomez/Nelson unreasonable delay ground. The only difference is that the district court in this case had an additional ground for denial of relief, which was that under our Hill and Robinson decisions relief could not have been granted on the claim anyway. The inclusion of an additional ground for denying relief certainly does not justify the grant of a stay.

We disagree with our dissenting colleague's assertion that Rutherford's case is on all fours with the Hill case, that the issues are virtually "identical" and that "had the instant case preceded Hill by one day, it would be currently awaiting Supreme Court review with the execution stayed." (Dissent at 22) That assertion misses the whole point that the denial of relief in Hill was not based in any part on unreasonable delay in filing the § 1983 complaint. Instead, in Hill the sole ground the district court and this Court relied on was Robinson's functional equivalent rule. That was the only reason given for dismissing the lawsuit in that case. Because the district court in this case, by contrast, alternatively treated Rutherford's complaint as cognizable under § 1983 and relied on the unreasonable delay ground as an additional alternative basis for denying § 1983 relief, this case is more like Bieghler than Hill. The district court did not abuse its discretion in denying equitable relief in Rutherford's last-minute § 1983 action.

16

**IV.**

The judgment of the district court dismissing Rutherford's 42 U.S.C. § 1983 complaint is AFFIRMED. The applications for stay of execution are DENIED.

WILSON, Circuit Judge, dissenting:

I would stay Rutherford's execution, and hold his case in abeyance until the Supreme Court reaches a decision in *Hill v. Crosby*, 11th Cir. 2006, __ F.3d __, (No. 06-10621, Jan. 24, 2006) (per curiam), *stay of execution and cert. granted*, __ S. Ct. __ (U.S. Jan. 25, 2006) (No. 05-8794).  The questions presented to the Supreme Court in *Hill* are virtually identical to those posed by Rutherford's case:

(1)     Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?

(2)     Whether, under this Court's decision in *Nelson*, a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983?

Furthermore, Rutherford's case raises these questions with regard to Florida's method of lethal injection, the same state method at issue in *Hill*.  In spite of these striking similarities, the majority holds that we must follow our decision in *Hill* and deny Rutherford's application for a stay, because *Hill* constitutes binding precedent in this circuit.  In the absence of certiorari by the Supreme Court in *Hill*, I would agree.  However, the Supreme Court's grant of certiorari in *Hill* calls our decision in that case into question.

18

I.

In *Hill*, we denied a stay of execution based on our decision in *Robinson v. Crosby*, 358 F.3d 1281 (11th Cir. 2004) (per curiam), because we found that it dealt with "the very issue" presented by *Hill*, which is, of course, the lethal injection method also at issue in Rutherford's case. In *Robinson*, we found that Robinson sought "to avoid entirely execution by lethal injection," and we determined that such a challenge "*necessarily* implicates the *validity* of his death sentence." *Robinson*, 358 F.3d at 1285-86 (emphasis added). We therefore concluded that Robinson's § 1983 claim was the "functional equivalent" of a successive habeas petition, and was properly dismissed by the district court for lack of jurisdiction. *See id.* at 1284-86. When we decided *Robinson*, however, we did not have the benefit of the Supreme Court's decision in *Nelson v. Campbell*, which acknowledged that method-of-execution claims are not easily categorized, and that "[a] suit seeking to enjoin a particular means of effectuating a sentence of death does *not* directly call into question the 'fact' or '*validity*' of the sentence itself . . . ." 541 U.S. 637, 643-44 124 S. Ct. 2117, 2123, 158 L. Ed. 2d 924 (2004) (emphasis added).[1] Given that this careful language is at odds with our more

---

[1] Although the Court also recognized that, under some circumstances, a method-of-execution challenge could implicate the "fact" of the sentence itself, the Court's language was not absolute. *See Nelson*, 541 U.S. at 644, 124 S. Ct. at 2123 ("[A] constitutional challenge seeking to permanently enjoin the use of lethal injection *may* amount to a challenge to the fact of the sentence

19

categorical approach in *Robinson*, that *Robinson* was the basis for our decision in *Hill*, and that the Supreme Court has now granted certiorari in *Hill* to review the same issues as those presented in Rutherford's case, there is good reason to stay Rutherford's execution. *Cf. Mobley v. Head*, 306 F.3d 1096, 1096-97 (11th Cir. 2000) (granting stay of execution where a forthcoming Supreme Court decision would "determine our resolution of the issues [appellant] raises in this appeal"); *In re Williams*, 359 F.3d 811, 815 (6th Cir.) ("The Supreme Court . . . and other circuits have all granted stays of execution when the Supreme Court has taken a case to resolve an important issue germane to the action.") (Moore, J., dissenting), *cert. denied sub nom. Williams v. Taft*, 540 U.S. 1206, 124 S. Ct. 1478, 158 L. Ed. 2d 129 (2004).

In *Robinson*, we did not attribute much weight to the fact that the Supreme Court had then granted certiorari on our decision in *Nelson v. Campbell*, 347 F.3d 910 (11th Cir. 2003), *rev'd*, 541 U.S. 637, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004) . *See Robinson*, 358 F.3d at 1283-85. We gave two reasons for this:

> First, the grant of certioari *alone* is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law. Second, and *more important*, the Defendants point out that there are material factual and legal distinctions between *Nelson* and this case in any event.

itself.") (emphasis added).

20

*Id.* at 1284 (internal citations omitted) (emphasis added). *Nelson*, we explained, involved not a challenge to the lethal injection itself, as in *Robinson*, but rather a challenge to the "cut-down" procedure used to gain venous access prior to the injection. *See id.* The Supreme Court's decision on the latter challenge, we surmised, would not affect our decision on the former. *See id.* at 1285. Regardless of whether one still finds this conclusion persuasive in light of the actual *Nelson* decision, our approach in *Robinson* does not require that we discount the grant of certiorari in *Hill*. All we said in *Robinson* is that the grant of certiorari "alone" does not "justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law." *Robinson*, 358 F.3d at 1284. We said that the "more important" factor is whether there are "material factual and legal distinctions" between the two cases. *Id.* Unlike *Robinson* in comparison to *Nelson*, there simply are no "material factual and legal distinctions" between Rutherford's case and *Hill*–a point that neither the parties nor the district court appear to dispute. Indeed, the district court expressly found that the issue Rutherford raised is the same issue that was raised in *Robinson* and *Hill*. *See Rutherford v. Crosby*, No. 06-cv-50 (N.D. Fla. Jan. 28, 2006).

The majority relies upon *Bieghler v. Donahue*, No. 06 C 136 (7th Cir. Jan. 26, 2006), *stay vacated by* No. 05A684, ___ U.S. ___, ___ S. Ct. ___ (Jan. 27,

21

2006) in which the Seventh Circuit entered a stay of execution which the Supreme Court eventually vacated. The factual similarities between Rutherford's case and *Hill* distinguish it from *Bieghler*. Although *Bieghler* involved a similar method of execution and relied on *Hill* for granting the stay, it did not involve the same jurisdictional question that both Rutherford's case and *Hill* present. In addition, in *Bieghler* and unlike in Rutherford's case, the state had offered to cure any problems with the execution method by administering additional anesthetic, which Bieghler refused. The fact that the Supreme Court vacated the *Bieghler* stay does not mean that it would vacate a stay in Rutherford's case, which is factually and legally identical to *Hill*.

In short, Rutherford's case is on all fours with *Hill*, a case from our circuit in which the Supreme Court has granted certiorari to review the same issues about the same method of execution in the same state. Indeed, had the instant case preceded *Hill* by one day, it would be currently awaiting Supreme Court review with the execution stayed. The Supreme Court's decision will provide us with essential guidance on the district court's jurisdiction, if any, to entertain Rutherford's § 1983 complaint–and thus the proper disposition of this appeal. Accordingly, we should stay Rutherford's execution and hold his case in abeyance pending the Supreme Court's resolution of the questions presented in *Hill*.

22

II.

The majority holds that, even assuming there is jurisdiction over Rutherford's § 1983 action, a stay is inappropriate because Rutherford unnecessarily delayed in bringing his claim. The district court abused its discretion in reaching this conclusion. Before granting a stay, a district court "must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50, 124 S. Ct. at 2126. However, the "strong equitable presumption against the grant of a stay" is appropriate only when "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 650, 2126. As is clear from the discussion above, there was little point in Rutherford bringing his § 1983 claim until the Supreme Court granted certiorari on our decision in *Hill*.

Appellees contend that Rutherford could and should have raised his claim in 2000, when Florida first provided for lethal injection. The key research on which Rutherford relies, however, was not published until April of 2005.[2] Of course, if

---

[2] The district court did not consider the April 2005 Lancet article to be significant, because courts had rejected factually similar arguments made prior to the article's publication. There is a difference, however, between how much Rutherford might have relied upon the presentation of losing arguments in court, and how much he might have relied upon a peer-reviewed article published in a scientific journal.

23

Rutherford had filed his § 1983 claim in 2005, our precedent in *Robinson* would have required that it be treated as a successive habeas petition and dismissed for lack of jurisdiction. *See Robinson*, 358 F.3d at 1284.[3] Indeed, not until the Supreme Court granted certiorari in *Hill* did Rutherford have reason to believe that, in this circuit, he might have a cognizable claim under § 1983. Given that the factual and legal bases for Rutherford's claim were not fully in place until six days before his scheduled execution, he cannot fairly be charged with "unnecessary delay." Moreover, nothing in the record before this Court indicates that Rutherford's filing is an attempt to stall his execution merely for delay's sake, or to "manipulate the judicial process." *See Nelson*, 541 U.S. at 650, 124 S. Ct. at 2126 (internal quotations and citation omitted). Thus, the district court abused its discretion in applying a "strong equitable presumption" against a stay–an error the district court further compounded by failing to weigh carefully Rutherford's likelihood of success on the merits and the relative harms to the parties. *See id.* at 649-50, 2126.

The district court also stated that, even if Rutherford had not delayed in bringing his claim, the claim would nevertheless fail because it does not fall within

---

[3] Had Rutherford brought his claims then as a successive habeas petition, they would have been denied as well. *See Robinson*, 358 F.3d at 1284; *In re Provenzano*, 215 F.3d 1233, 1236 (11th Cir. 2000) (per curiam).

*Nelson*'s "narrow confines." In other words, the district court construed *Nelson* to require that Rutherford demonstrate that he suffers from a "unique medical condition" which the lethal injection protocol would aggravate. Yet, this is precisely the subject of one of the questions presented to the Supreme Court in *Hill* (and specifically not addressed in *Nelson*): whether a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983. Thus, we have all the more reason to grant a stay and await the Supreme Court's guidance.

Finally, as *Hill* demonstrates, a last minute stay of execution in an extraordinary case is not unique, particularly when the Supreme Court is preparing to decide an issue that controls the case's outcome. *See Mobley* 306 F.3d at 1096-97; *see also In re Holladay*, 331 F.3d 1169 (11th Cir. 2003) (granting eleventh hour application for leave to file a second habeas petition and stay of execution); *Bolender v. Singletary*, 60 F.3d 727 (11th Cir. 1995) (per curiam) (denying eleventh hour application for certificate of probable cause but staying execution to give the Supreme Court an opportunity to consider the application). Since death by execution is an irreversible penalty, we would be remiss to permit Rutherford's execution to proceed, only to have the Supreme Court later decide that he was entitled to pursue his claim in federal district court. This is the very purpose for

25

the availability of a stay of execution.  I respectfully dissent.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF FLORIDA**

**TALLAHASSEE DIVISION**


**ARTHUR DENNIS RUTHERFORD,**

      **Petitioner,**

**v.**                                         **Case No.  4:06-cv-50/MCR**

**JAMES V. CROSBY, JR., Secretary,**
**Florida Department of Corrections, and**
**CHARLIE CRIST, Attorney General of Florida,**

      **Respondents.**

_____/

**ORDER**

      **This matter is before the court on a Verified Complaint for Declaratory and Injunctive Relief filed by Arthur Rutherford through his counsel on January 27, 2006, with supporting memoranda, and an Application for Stay and Motion to Hold Proceedings in Abeyance.[1] For the reasons that follow, the court finds that the petition must be dismissed for lack of jurisdiction.[2] This case has an extensive history dating back to Petitioner's original death sentence in December of 1986. The facts and procedural history of the case are set out in the Eleventh Circuit Court of Appeals' opinion in** <u>Rutherford v. Crosby</u>, **385 F.3d 1300 (11ᵗʰ cir. 2004),** <u>cert. denied</u>, **125 S. Ct. 1847 (2005), and demonstrate that the Petitioner has**

---

    [1] For reasons explained <u>infra</u>, the court will hereinafter refer to the complaint as a petition and to plaintiff as petitioner.

    [2] While Respondents argue that Rutherford's petition should be dismissed for failure to state a cause of action as opposed to lack of jurisdiction, a federal court may determine *sua sponte* that it lacks the jurisdiction to entertain the matter before it. <u>Vermeulen v. Renault., U.S.A., Inc</u>., 985 F.2d 1534, 1542 (11ᵗʰ Cir. 1993); <u>see also</u>, <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 410 (11ᵗʰ Cir. 1999).

Case No.: 4:06cv 50/MCR

filed previous petitions for habeas corpus, both in the state and federal courts. See e.g., Rutherford v. State, 545 So.2d 853 (Fla. 1989); Rutherford v. State, 727 So.2d 216 (Fla. 1999); Rutherford v. Moore, 774 So.2d 637 (Fla. 2000).

Petitioner now brings the instant suit as a complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 for alleged prospective violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, claiming that death by lethal injection according to the protocol followed in Florida "creates a foreseeable risk of the gratuitous and unnecessary infliction of pain on a person being executed." Plaintiff bases his claim on a research article co-authored by Dr. David A. Lubarsky, an anesthesiologist, and published in The Lancet . This article, "Inadequate Anaesthesia in Lethal Injection for Execution," Vol 365, The Lancet 1412-14 (April 16, 2005), is attached to Petitioner's petition as Attachment B and states:

> Lethal injection usually consists of sequential administration of sodium thiopental for anaesthesia, pancuronium bromide to induce paralysis, and finally potassium chloride to cause death. (Cite omitted). Without anaesthesia, the condemned person would experience asphyxiation, a severe burning sensation, massive muscle cramping, and finally cardiac arrest. Thus, adequate anaesthesia is necessary both to mitigate the suffering of the condemned and to preserve public opinion that lethal injection is a near-painless death.

Id. at 1412. The above conclusion is based on research and data from post-mortem toxicological tests conducted on condemned inmates in Arizona, Georgia, North Carolina and South Carolina, from which the researchers found that the concentrations of thiopental (sodium pentothal) were lower than that required for surgery in 88% of the executed inmates and that 43% of the executed inmates had concentrations of thiopental consistent with awareness because they had an insufficient amount of sodium pentothal in their bloodstream to

provide adequate anesthesia. (Doc. 2-1 at 7-8).[3] The article suggests that "some inmates might experience awareness and pain during execution." The Lancet at 1412. Petitioner contends that under Florida's lethal injection protocol there is a likelihood that he will unnecessarily suffer awareness and pain during his execution in violation of the Eighth Amendment and Fourteenth prohibition against cruel and unusual punishment.

This very same issue was recently addressed in Hill v. Crosby , 2006 WL 167585(N.D. Fla.)(Jan. 21, 2006), wherein the district court dismissed Hill's complaint for declaratory and injunctive relief pursuant to § 1983 for lack of jurisdiction, treating Hill's § 1983 complaint as the functional equivalent of a successive habeas corpus petition and finding that it lacked jurisdiction to consider it as such because Hill had failed to obtain leave from the Eleventh Circuit to file it as required by 28 U.S.C. § 2244(b)(3)(A).[4] On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's order, confirming that the court lacked jurisdiction to hear Hill's complaint without his having first obtained leave to file a successive habeas corpus petition pursuant to the requirements of

---

[3] Florida's lethal injection procedure is outlined in detail in Sims v. State, 754 So.2d 657, 666 (Fla. 2000), and it is assumed that the same procedure will be used in Petitioner's execution. Dr. Lubarsky states in his affidavit, attached to Petitioner's petition as Attachment A, that on the basis of information contained in Sims the procedure used in Florida is substantially similar to the procedure used in the states which provided the toxicology data. See Attachment A at 6.

[4] 28 U.S.C. § 2244(b) provides as follows:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior appeal shall be dismissed.
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U. S. C. § 2244(b)(3)(A) further provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."

Case No.: 4:06cv 50/MCR

28 U.S.C. § 2244(b)(3)(A).  Hill v. Crosby, 2006 WL 163607 (11th Cir., Jan. 24, 2006).  Thereafter, the United States Supreme Court stayed Hill's execution and granted his petition for a writ of certiorari.  Hill v. Crosby, 2006 WL 171583 (Jan. 25, 2006).[5]

Ruling on Hill's § 1983 claim, the district court correctly relied on the binding precedent of this circuit in  Robinson v. Crosby, 358 F.3d 1281 (11th Cir. 2004), by treating Hill's claim as the functional equivalent of a successive habeas corpus petition.  In Robinson, the petitioner alleged that "lethal injection causes those who are executed pain and suffering while they are paralyzed and unable to communicate," in violation of their Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.  Id. at 1282.  The district court construed Robinson's § 1983 action as the functional equivalent of a successive habeas corpus petition which would subject him to the requirements of 28 U.S.C. § 2244.  In concluding that the district court properly dismissed Robinson's § 1983 complaint for lack of jurisdiction the Eleventh Circuit held:

> A § 1983 claim seeking relief–including a TRO, preliminary injunction, or a stay of execution–from a sentence of death as cruel and unusual punishment is the "functional equivalent" of a successive habeas petition.  The district court lacked jurisdiction to consider Robinson's claim because he failed to apply to this Court for permission to file a successive habeas petition.  We further note that such an application to file a successive habeas petition would be denied in any event.  See In re Provenzano, 215 F.3d 1233, 1235-36 (11th Cir. 2000), cert. denied, 530 U.S. 1256, 120 S. Ct.

---

[5]  The two questions presented to the Court in support of the petition for certiorari review are as follows:

  1.  Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?

  2.  Whether, under the Court's decision in Nelson v. Alabama, 541 U.S. 637, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004), a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983?

  Notably, on January 27, 2006, the United States Supreme Court vacated a stay of execution issued by the Seventh Circuit Court of Appeals in Bieghler v. Donahue, Case No. 06-1300. See Donahue v. Bieghler, Case No. 05A684.  The Seventh Circuit had granted the stay based solely on the Supreme Court's grant of the writ of certiorari in Hill v. Crosby.  However, in Bieghler the lower courts did not recharacterize Bieghler's § 1983 claim as a successive habeas corpus petition and therefore the issue before the Supreme Court on petition for certiorari in Bieghler and Hill was not the same.

> **2710, 147 L. Ed. 2d 979 (2000) (concluding that a claim that lethal injection constitutes cruel and unusual punishment does not meet the requirements of 28 U.S.C. § 2244(b)(2)(A) or (B)).**

**Id. at 1284 (remaining internal cites omitted). The issue presented in Robinson is essentially the issue presented here, i.e. whether a district court has jurisdiction to consider an inmate's claim brought pursuant to 42 U.S.C. § 1983 alleging that "by using a succession of three chemicals that will cause unnecessary pain in the execution of a sentence of death," the Petitioner will be deprived "of his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment," a question the Eleventh Circuit answered in the negative in Robinson. Petitioner in this case, however, has not addressed Robinson, nor has he attempted to distinguish his case from Hill. The issue raised by Petitioner here was raised, addressed, and disposed of in both Robinson and Hill. Accordingly, following and applying the law of this circuit as set forth in Robinson and Hill, this court concludes that Petitioner's § 1983 complaint seeks to avoid his execution by lethal injection and therefore necessarily implicates the validity of his death sentence.[6] Consequently, Petitioner's claim and request for relief is the functional equivalent of a successive habeas corpus petition and absent his having first obtained leave to file a successive petition from the Eleventh Circuit pursuant to 28 U.S.C. § 2244(b)(3)(A), this court is without jurisdiction to entertain Petitioner's petition. Notwithstanding, even assuming Petitioner has a cognizable claim under 42 U.S.C. § 1983, this court would nonetheless conclude that he is not entitled to relief due to unnecessary delay in bringing his claim.[7] See Gomez v. United States Dist. Court for N. Dist. of Cal.,**

---

[6] While this court acknowledges that a writ of certiorari was granted in Hill's case and that the claim and request for relief sought by Petitioner are identical to Hill's, the grant of certiorari in Hill's case does not change the law of this circuit or justify this court's granting a stay of execution on the possibility that the Supreme Court may overturn Eleventh Circuit law. See Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir. 2004); Ritter v. Thigpen, 828 F.2d 662, 665-66 (11th Cir. 1987).

[7] The court seriously doubts that Petitioner's claim in any event would fall within the narrow confines of Nelson v. Campbell, 541 U.S. 637, 649, 124 S. Ct. 2117, 2125, 158 L. Ed. 2d 924 (2004)(noting that its holding "is extremely limited.").

Case No.: 4:06cv 50/MCR

503 U.S. 653, 654, 112 S. Ct. 1652, 1653, 118 L. Ed. 2d 293 (1992)(per curiam)("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief."). Petitioner, however, claims that The Lancet article is the "first empirical research published regarding lethal injection." (Doc. 3 at n.1). While The Lancet article itself may be new, the factual basis of Petitioner's claim (that the doses of the anesthetic sodium pentothal may be insufficient thus permitting those injected to experience the feelings of being suffocated and having a heart attack, but unable to express their pain by virtue of being paralyzed by pancuronium ), has been raised and disposed of in other cases. As the court in Robinson noted:

> "the affidavits [accompanying Robinson's section 1983 complaint] discuss the drugs used in the lethal injection. Three affidavits that Robinson filed in the district court are copies of affidavits from the case of State of Texas v. Jesus Flores, No. 877994. These affidavits address the effects of the drugs used during lethal injection, how they each cause pain and suffering, and particularly how the pancuronium bromide chemical paralyzes the person and masks the pain and suffering being incurred.

Robinson, 358 F.3d at 1285 n. 4. See also Brown v. Crawford, 408 F.3d 1027 (8th Cir. 2005); Bieghler v. State, 839 N.E.2d 691(Ind. 2005). Moreover, Florida's lethal injection methods were subjected to a full evidentiary hearing in 2000 in Sims v. State, 754 So.2d 657 (Fla. 2000), and Petitioner could have challenged the procedure after the Sims decision was rendered. Thus, the petition in this case raises no true issues of newly discovered evidence.

Additionally, Petitioner has offered no reason for his delay in bringing a § 1983 action until just days before his scheduled execution. The court notes there is no requirement to exhaust state proceedings prior to bringing a § 1983 claim.[8] In general, exhaustion of state remedies is not a prerequisite to filing an action under § 1983, even in the case of state prisoners, unlike federal habeas corpus actions brought pursuant to 28 U.S.C. § 2254 where exhaustion of state remedies

---

[8] Petitioner has also not specifically addressed his failure to comply with the requirements of The Prison Litigation Reform Act of 1995 nor argued why he would be exempt from these requirements. See 42 U.S.C. § 1997e(a).

Case No.: 4:06cv 50/MCR

is required.  See Heck v. Humphrey, 512 U.S. 477, 480, 114 S. Ct. 2364, 2369, 129 L. Ed. 2d 383 (1994); Patsy v. Board of Regents of Fla., 457 U.S. 496, 501 and 509, 102 S. Ct. 2557, 2560 and 2564, 73 L. Ed. 2d 172 (1982).  As stressed by the Supreme Court in Nelson v. Campbell, 541 U.S. 637, 649-50, 124 S. Ct. 2117, 2126, 158 L. Ed. 2d 924 (2004):

> A stay is an equitable remedy, and "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation." [Gomez, 503 U.S. at 654, 112 S. Ct. at 1653]. Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim.  Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

(remaining internal cites omitted).  See also In re Hicks, 375 F.3d 1237, 1241 (11th Cir. 2004); Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004)("By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."); White v. Johnson, 429 F.3d 572, 574 (5th Cir. 2005)("White has been on death row for more than six years, and only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row . . . . White has no excuse for delaying his claim until the eleventh hour, and he cannot argue that 'he was unaware of the State's intention to execute him by injecting the three chemicals he now challenges.'" (citing Harris, supra, 376 F.3d at 417)); White v. Livingston, 126 S. Ct. 601 (2005)(denial of stay of execution).[9]

Finally, even assuming Petitioner had not delayed in bringing his current action, the court would nonetheless find that Petitioner's claim fails to fall within the narrow confines of Nelson.  Here Petitioner is challenging Florida's standard

---

[9] The Supreme Court also recognized in Nelson that "the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right."  Nelson, 541 U.S. at 649, 124 S. Ct. at 2125-26.

Case No.: 4:06cv 50/MCR

protocol involving lethal injection and has made no claim, as the petitioner did in **Nelson**, that due to his unique medical situation the lethal injection protocol as applied to him constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Therefore, Petitioner is in effect challenging the validity of his sentence and is thus subject to the laws governing federal habeas corpus petitions.  This court is without jurisdiction to entertain Petitioner's petition without his first complying with the requirements of 28 U.S.C § 2244(b)(3)(A).

Accordingly, it is hereby ORDERED and ADJUDGED that Petitioner's Verified Complaint for Declaratory and Injunctive Relief (doc. 2) is hereby DISMISSED for lack of jurisdiction.  Petitioner's Application for Stay of Execution and Motion to Hold Proceedings in Abeyance (doc. 4) is DENIED.  No stay of execution shall issue in this case.

DONE and ORDERED this 28th day of January, 2006.


**s/ *M. Casey Rodgers***
**M. CASEY RODGERS**
**United States District Judge**

Case No. 4:06-cv-50/MCR