*1089 PER CURIAM:
This is the appeal of Arthur Dennis Rutherford, a Florida death row inmate, from the judgment of the district court dismissing his 42 U.S.C. § 1983 action challenging the details of that state’s lethal injection procedures. (A copy of the district court’s order is attached as an appendix to this opinion.) The district court stated two independently adequate grounds for dismissal.
I.
The first ground on which the district court dismissed Rutherford’s § 1983 complaint is that under our prior precedent a claim attacking the general procedures or protocols a state uses to carry out executions by lethal injection must be brought in a habeas corpus proceeding, and Rutherford had not obtained from this Court an order permitting him to file a second or successive petition. See 28 U.S.C. § 2244(b). That decision of the district court is correct as a matter of circuit law. See Hill v. Crosby, 437 F.3d 1084, No. 06-10621, 2006 WL 163607 at *1 (11th Cir. Jan. 24, 2006), cert. granted, No. 05-8794, -U.S. -, 126 S.Ct. 1189, — L.Ed.2d -, 2006 WL 171583 (Jan. 25, 2006); Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir.2004).
Of course, circuit law certainly can be changed by a decision of the Supreme Court. See Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir.1997); Cottrell v. Caldwell, 85 F.3d 1480, 1485 (11th Cir.1996); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir.1992). A grant of certiorari, however, is not a decision and does not affect our obligation, or the obligation of district courts in this circuit, to follow prior decisions of this Court. See Robinson, 358 F.3d at 1284 (“[T]he grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law.”); Ritter v. Thigpen, 828 F.2d 662, 665-66 (11th Cir.1987) (“A grant of certiorari does not constitute new law.”); Mulligan v. Kemp, 818 F.2d 746, 747-48 (11th Cir.1987) (The grant of certiorari does not constitute a “decided case upon which to pass a new law claim.”); Thomas v. Wainwright, 788 F.2d 684, 689 (11th Cir.1986) (“[A]ny implications to be drawn [from a grant of certio-rari in another case] may be discerned by application to the Supreme Court.”) (citation omitted); Jones v. Smith, 786 F.2d 1011, 1012 (11th Cir.1986) (same); Bowden v. Kemp, 774 F.2d 1494, 1495 (11th Cir.1985) (same). The district court was correct to dismiss the § 1983 complaint in this case on the basis of our decisions in the Hill and Robinson cases. As required by our prior panel precedent rule, we affirm the district court’s dismissal on that basis.
II.
The district court also dismissed the complaint on the alternative basis that even if Rutherford’s complaint states a cognizable claim under § 1983, he had delayed unnecessarily in bringing his claim about Florida’s lethal injection procedures and thus was not entitled to injunctive relief in a last-minute § 1983 action.[1] We *1090 review the dismissal on that basis only for an abuse of discretion. See Kidder, Peabody & Co. v. Brandt, 131 F.3d 1001, 1003 (11th Cir.1997) (“We review the district court’s denial of injunctive relief under an abuse of discretion standard.”); Sofarelli v. Pinellas County, 931 F.2d 718, 724 (11th Cir.1991) (“The issuance or denial of in-junctive relief [in a § 1983 lawsuit] is within the discretion of the district court and will not be disturbed absent an abuse of discretion or action contrary to equity.”). The standard of review is not critical, however, because we would reach the same conclusion even on de novo review.
The district court concluded that Rutherford’s unreasonable and unexcused delay in waiting until the eleventh hour to file the claim in a § 1983 lawsuit disentitled him from equitable relief, which is all the relief he was seeking. The law the district court applied in this part of its decision is discussed in Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). There, the Supreme Court explained why its decision in that case would not “open the floodgates to all manner of method-of-exeeution challenges, as well as last minute stay requests.” See Nelson, 541 U.S. at 649, 124 S.Ct. at 2125. In that explanation, the Court discussed its earlier decision in Gomez v. United States Dist. Court for N. Dist. of Cal., 503 U.S. 653, 112 S.Ct. 1652,118 L.Ed.2d 293 (1992) (per curiam), which had vacated a stay of execution entered by the federal appeals court in a § 1983 lawsuit challenging the method of execution, even though the Court recognized that the claim may have been cognizable under § 1983. The reason the Supreme Court had concluded that the death row inmate was not entitled to a stay of execution in Gomez is that he had “waited until the 11th hour to file his challenge despite the fact that California’s method of execution had been in place for years.” Nelson, 541 U.S. at 649, 124 S.Ct. at 2126.
In reaching that conclusion in Gomez the Supreme Court emphasized the State’s strong interest in proceeding with its judgment and how a court may consider the last-minute nature of a stay application:
Whether his claim is framed as a habeas petition or as a § 1983 action, Harris seeks an equitable remedy. Equity must take into consideration the State’s strong interest in proceeding with its judgment and Harris’ obvious attempt at manipulation. This claim could have been brought more than a decade ago. There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process. A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.
Gomez, 503 U.S. at 653-54, 112 S.Ct. at 1653 (emphasis added) (internal citations omitted). The Supreme Court reiterated those points in its Nelson opinion, quoting with approval the key language from the Gomez opinion. Nelson, 541 U.S. at 649, 124 S.Ct. at 2126. The Court went beyond what it had said earlier and instructed lower courts that:
A stay is an equitable remedy, and “[e]quity must take into consideration the State’s strong interest in proceeding with its judgment and ... attempts] at manipulation.” Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State’s significant interest in enforcing its criminal judgments, there is a strong equita *1091 ble presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.
Id. at 649-50, 124 S.Ct. at 2126 (quoting Gomez, 503 U.S. at 654, 112 S.Ct. at 1653) (internal citations and punctuation omitted) (alterations in original).[2]
The Supreme Court’s teachings in Gomez and Nelson that lower courts should apply equitable principles in this kind of § 1983 case have been heeded by a number of courts faced with eleventh hour efforts of death row inmates to use § 1983 lawsuits to challenge lethal injection procedures and protocols. More specifically, as the district court did here, other circuits have concluded that even if a challenge to the three-chemical lethal injection procedure states a cognizable claim under § 1983, the petitioner is not entitled to a stay and/or injunctive relief if he delays until just before the scheduled execution the filing of a § 1983 action for equitable relief. White v. Johnson, 429 F.3d 572, 573-74 (5th Cir.2005) (affirming the dismissal of White’s § 1983 action for injunc-tive relief and emphasizing that White delayed until the eleventh hour to file his challenge to the state’s lethal injection with the three chemicals in issue),[3] petition for stay of execution denied sub nom., White v. Livingston, — U.S. -, 126 S.Ct. 601, 163 L.Ed.2d 502 (2005); Cooper v. Rimmer, 379 F.3d 1029, 1031-33 (9th Cir.2004) (affirming the denial of last-minute equitable relief in § 1983 action challenging state’s three-chemical protocol for execution by lethal injection); Harris v. Johnson, 376 F.3d 414, 416-18 (5th Cir.2004) (concluding that petitioner was not entitled to equitable relief in § 1983 action challenging the state’s three-chemical protocol for execution by lethal injection where he had unnecessarily delayed in bringing his claim); see also Bieghler v. Donahue, No. 1:06-cv-00136-LJM-TAB (S.D.Ind. Jan. 26, 2006) (relying on Nelson and denying TRO and preliminary injunction in plaintiffs last-minute § 1983 action challenging the state’s three-chemical method of lethal injection and dismissing the § 1983 action), stay of execution granted, 163 Fed.Appx. 419, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006) (unpublished order), stay of execution vacated, No. 05A684, — U.S. -, 126 S.Ct. 1190, *1092 — L.Ed.2d -, 2006 WL 189970 (Jan. 27, 2006).
In each of those cited decisions the petitioner raised the same three-chemical challenge to the means of lethal injection that Rutherford has raised in this case. Of course, where petitioner’s scheduled execution is imminent, there is no practical difference between denying a stay on equitable grounds and denying injunctive relief on equitable grounds in a § 1983 lawsuit.
The district court was fully justified in applying the Gomez/Nelson equitable principles to bar Rutherford’s request for an injunction against his execution by lethal injection. Rutherford has been on Florida’s death row for more than nineteen years. See Rutherford v. Crosby, 385 F.3d 1300, 1305 (11th Cir.2004). The state enacted a lethal injection option statute six years ago. See Fla. Stat. § 922.105(1) (as amended by 2000 Fla. Sess. Law Serv. Ch. 00-2 (S.B. No. 10A § 2) (West)); see also Sims v. Florida, 754 So.2d 657, 663 n. 11 (Fla.2000). There has been no suggestion that the lethal injection chemicals or procedures used by Florida have changed in the last six years, and Rutherford’s complaint assumes that they have not. See Complaint at 7 n.2. The Lancet research letter upon which he bases his claim was published nine months before he filed his complaint. See L.G. Koniaris, M.D., et al., “Inadequate Anaesthesia in Lethal Injection for Execution,” 365 The Lancet 1412 (Apr. 16, 2005). The Governor signed Rutherford’s death warrant on November 29, 2005, setting the period from noon on January 30, 2006 through noon February 6, 2006 for the execution. The warden set the actual execution time as Tuesday, January 31, 2006, at 6:00 p.m. ET. Not until 7:12 p.m. ET on Friday, January 27, 2006, only two work days and four calendar days before the scheduled execution, did Rutherford file his § 1983 lawsuit claiming that the combination and amounts of chemicals Florida uses causes unnecessary pain in violation of the Eighth and Fourteenth Amendments.
The district court pointed out that Rutherford had offered no reason for his delay in bringing this action just days before his scheduled execution. In his filings with us, Rutherford argues that he was precluded from filing this lawsuit earlier by our Robinson decision, an excuse the dissenting opinion accepts. The obvious flaw in that argument is that, as we have already explained, the grant of certiorari in Hill has not affected the precedential value of Robinson. It is no less the law of the circuit today than it was when we issued it. If Rutherford could file the lawsuit now, as he has, he could have filed it before.
If, as the dissenting opinion says, “not until the Supreme Court granted certiorari in Hill did Rutherford have reason to believe that, in this circuit, he might have a cognizable claim under § 1983,” then Hill had no reason to believe that he might have a cognizable claim under § 1983 either. The dissent overlooks the fact that Hill did not have the benefit of the certio-rari grant in Hill when Hill filed his lawsuit. Yet Hill filed the lawsuit without any grant of certiorari on the issue. Rutherford could have done exactly the same thing any time since Florida adopted lethal injection six years ago, and certainly any time since The Lancet research letter came out nine months ago. Instead, he chose to wait until the evening of the fourth calendar day before his execution.
In addition to affirming the district court’s dismissal of Rutherford’s § 1983 lawsuit on the basis of our Robinson and Hill decisions, we affirm it as well on the district court’s alternative ground based on the Supreme Court’s holding in Gomez and its instructions in Nelson about § 1983 *1093 claims that are filed after unreasonable delay.
III.
Rutherford has filed with us an application for a stay of execution pending resolution of this appeal. Because we are resolving this appeal by affirming the district court’s dismissal of his § 1983 lawsuit, that application for stay will be denied.
Rutherford also has filed with us a separate application seeking a stay pending a decision by the Supreme Court in the Hill case. We also deny it for two reasons. First, even if the Supreme Court decides in the Hill case to overturn our Hill and Robinson decisions and holds that this type of claim is cognizable in a § 1983 proceeding, Rutherford still will not be entitled to any equitable relief because of the district court’s independently adequate alternative ground for dismissing his complaint, which we are affirming in this opinion. Neither of the two questions on which certiorari was granted in Hill touch on that alternative ground.
Second, the Supreme Court is in a better position to decide whether it wants a stay of execution issued in this case than we are, and it has time to make a decision about a stay. All of the papers filed in the district court and in this Court throughout this proceeding have been contemporaneously lodged with the Supreme Court, and that Court will have our opinion within minutes of the time we issue it. Our decision to let the Supreme Court decide whether it wants to issue a stay of execution in this case is informed by two considerations.
One of those considerations is what this Court has done when facing this same situation in the past. At least four times over the years we have been asked to issue a stay of execution based on a grant of certiorari in another case raising an issue identical to one that the movant was raising in the case before us, an issue foreclosed by existing circuit precedent that might be overruled by the Supreme Court. All four times we have declined to do so because the grant of certiorari does not change circuit precedent, and it makes more sense to let the Court that is going to be deciding the issue determine whether there should be a stay in another case raising it. Robinson v. Crosby, 358 F.3d at 1284 (declining to grant a stay pending the Supreme Court’s decision in Nelson v. Campbell because “the grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law”); Thomas v. Wainwright, 788 F.2d at 689 (denying a stay even though certiorari had been granted in another case on the issue, because “[t]o date, the law in this Circuit, which has not been modified by Supreme Court decision, mandates a denial of relief to petitioner on this issue,” and “any implications to be drawn [from the grant of certiorari in the other case] may be discerned by application to the Supreme Court”) (internal marks and citations omitted); Jones v. Smith, 786 F.2d at 1012 (same); Bowden v. Kemp, 774 F.2d at 1495 (same).[4]
*1094 The second consideration that informs our decision not to grant a stay of execution in this case pending the decision in Hill is what happened last week in the Bieghler case, a case raising issues remarkably similar to those in this one. The complaints in both cases raised the same Eighth Amendment issue based on the same alleged harmful effects of the same chemical sequence of sodium pentothal, pancuronium bromide, and potassium chloride used by Indiana and Florida to carry out executions by lethal injection. The complaints’ descriptions of the nature and effects of each of the three chemicals are substantially similar. For example, Biegh-ler’s complaint described sodium pentothal as “an ultrashort-acting barbiturate that begins to wear off almost immediately” and alleged that it is used “only in the induction phase of anaesthesia ... so that the patient may re-awaken and breathe on their own power if any complications arise in inserting a breathing tube pre-surgery.” (Bieghler Compl. at 3-4.) Rutherford’s complaint describes sodium pentothal as “an ultrashort-acting substance which produces shallow anesthesia” and alleges that it is used primarily “as an initial anesthetic in preparation for surgery while they set up a breathing tube in the patient.” (Rutherford Compl. at 4.) The two complaints’ descriptions of the other two chemicals are also materially identical. 0Compare Bieghler Compl. at 3-5 with Rutherford Compl. at 5-6.)
Both complaints rely on the same research letter published in The Lancet, a medical journal. They both characterize the principal finding of the cited work as being that sodium pentothal levels in the blood of 21 of the 49 executed inmates indicated that those inmates had “consciousness during the execution,” (Bieghler Compl. at 6), and were therefore able to feel “the suffering of suffocation from pan-curonium bromide, and the burning of the veins followed by the heart attack caused by the potassium chloride.” (Rutherford Compl. at 6-7).
On January 26, 2006, Bieghler filed a last-minute § 1983 claim seeking injunc-tive relief and a stay of execution, which the district court denied on the same day. Bieghler v. Donahue, No. 1:06-CV-0136-LJM-TAB (Jan. 26, 2006). The reason for the denial was that Bieghler had delayed unnecessarily the filing of his § 1983 claim. Id. The Seventh Circuit granted a stay of execution later that day. See Bieghler v. Donahue, 163 Fed.Appx. 419, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006). The reason the Seventh Circuit granted the stay was the Supreme Court’s grant of certiorari in Hill v. Crosby, No. 05-8794, — U.S. -, 126 S.Ct. 1189, — L.Ed.2d -, 2006 WL 171583 (Jan. 25, 2006). Upon the State of Indiana’s motion, the Supreme Court vacated the stay the Seventh Circuit had issued. Donahue v. Bieghler, No. 05A684, — U.S. -, 126 S.Ct. 1190, — L.Ed. -, 2006 WL 189970 (Jan. 27, 2006).
The dissenting opinion in this case attempts to distinguish the Bieghler case on the ground that the state in that case offered to alter the dosages of the drugs used, an offer Beighler refused. That is an interesting fact, but not one that had anything to do with the district court’s denial of injunctive relief and dismissal of the § 1983 lawsuit. The district court decision in that case makes clear that it was grounded solely on Beighler’s unreason *1095 able delay in seeking relief, not on his refusal to help the state execute him in a constitutional manner. Citing the unreasonable delay decision in White v. Johnson, the Bieghler court explained: “Biegh-ler has delayed unnecessarily in seeking relief. The equities now lie with the ability of the State of Indiana to execute the sentence Bieghler received and which has withstood decades of review.” Bieghler v. Donahue, No. 1:06-CV-0136-LJM-TAB at 3 (Jan. 26, 2006).
The district court in this case, like the district court in the Bieghler case, denied relief on the Gomez/Nelsoh unreasonable delay ground. The only difference is that the district court in this case had an additional ground for denial of relief, which was that under our Hill and Robinson decisions relief could not have been granted on the claim anyway. The inclusion of an additional ground for denying relief certainly does not justify the grant of a stay.
We disagree with our dissenting colleague’s assertion that Rutherford’s case is on all fours with the Hill case, that the issues are virtually “identical” and that “had the instant case preceded Hill by one day, it would be currently awaiting Supreme Court review with the execution stayed.” (Dissent at 1097). That assertion misses the whole point that the denial of relief in Hill was not based in any part on unreasonable delay in filing the § 1983 complaint. Instead, in Hill the sole ground the district court and this Court relied on was Robinson’s functional equivalent rule. That was the only reason given for dismissing the lawsuit in that case. Because the district court in this case, by contrast, alternatively treated Rutherford’s complaint as cognizable under § 1983 and relied on the unreasonable delay ground as an additional alternative basis for denying § 1983 relief, this case is more like Bieghler than Hill. The district court did not abuse its discretion in denying equitable relief in Rutherford’s last-minute § 1983 action.
IV.
The judgment of the district court dismissing Rutherford’s 42 U.S.C. § 1983 complaint is AFFIRMED. The applications for stay of execution are DENIED.

. In the Hill case the district court and this Court treated Hill's § 1983 complaint solely as the functional equivalent of a successive habeas petition and dismissed it. Hill v. Crosby, 437 F.3d 1084 (11th Cir.2006). As discussed later, Rutherford’s case is materially different from Hill’s because both the district court, and now this Court have determined that even if Rutherford’s challenge to the three-chemical process in lethal injection is cognizable in a § 1983 action, Rutherford’s request for injunctive relief in this action is *1090 properly denied on equitable grounds because of unnecessary delay.

. The wisdom behind a policy of discouraging to the extent reasonably possible last-minute filings in death sentence cases is illustrated in this case. Rutherford's attorneys waited until 7:00 p.m. ET on Friday, January 27, 2006 to file his § 1983 complaint in the district court. The district court ruled on it at 11:25 p.m. ET on Saturday, January 28. The notice of appeal was filed after midnight. Rutherford’s application for a stay of execution and for an expedited appeal was not filed in this Court until 2:00 p.m. ET on January 29. We granted the motion to expedite this morning and at 9:05 a.m. ET the attorneys for Rutherford were notified of that fact and given until 2:00 p.m. ET to file any supplemental briefs they wished to file on the merits. In their supplemental brief they complain about not having more time to brief the issues which they brought to us on the Sunday afternoon before the scheduled execution on Tuesday. That situation, of course, is a product of their own delay in commencing this litigation.

. The Fifth Circuit in White also rejected White’s argument that because he was not requesting just a stay but permanent injunc-tive relief in his § 1983 action, Nelson and Gomez therefore did not apply. White, 429 F.3d at 573-74. We agree with the Fifth Circuit that the last-minute rules of the Supreme Court in Nelson and Gomez "were declared by the Court in the context of last-minute § 1983 method of execution challenges as well as last-minute stay requests. The principles enunciated by the [Supreme] Court are equally applicable to all types of equitable relief, including permanent injunctions, sought by inmates facing imminent execution.” Id. at 573-74 (internal citation omitted).

. Our dissenting colleague relies on Mobley v. Head, 306 F.3d 1096 (11th Cir.2002), for the proposition that a stay should be granted when the Supreme Court has granted certio-rari in another case to decide a common issue. To the extent Mobley supports that position, it is inconsistent with the Thomas, Jones, and Bowden decisions which preceded it. Under the prior panel precedent rule it is absolutely clear that where decisions are inconsistent, the earlier decision (or in this instance the earlier three decisions) establish the law that must be followed. See United States v. Hornaday, 392 F.3d 1306, 1316 (11th *1094 Cir.2004); Hurth v. Mitchem, 400 F.3d 857, 862 (11th Cir.2005); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir.2000).
Although it attempts to distinguish Robinson, the dissenting opinion makes no effort to distinguish Thomas, Jones, and Bowden, and in fact they are indistinguishable.