[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-10783
_____

D.C. Docket No. 06-00050-CV-MCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 5, 2006
THOMAS K. KAHN
CLERK

ARTHUR D. RUTHERFORD,

Plaintiff-Appellant,

versus

JAMES MCDONOUGH,
CHARLIE CRIST,

Defendants-Appellees.

--------------------------------
On Appeal from the United States District Court for the
Northern District of Florida
--------------------------------
(October 5, 2006)

**ON REMAND FROM THE
UNITED STATES SUPREME COURT**

Before CARNES, HULL and WILSON, Circuit Judges.

CARNES, Circuit Judge:

The Supreme Court vacated our prior decision, Rutherford v. Crosby

(Rutherford I), 438 F.3d 1087 (11th Cir. 2006), and remanded this case to us for

further consideration in light of that Court's decision in Hill v. McDonough, 547

U.S. ___, 126 S. Ct. 2096 (2006). See Rutherford v. McDonough, 126 S. Ct. 2915 (2006).

## A.

Twenty years ago this month Arthur Rutherford was convicted and sentenced to death for the brutal murder of Stella Salmon, a sixty-three year old widow. Rutherford v. Crosby, 385 F.3d 1300, 1302–05 (11th Cir. 2004). During the past two decades the validity of his conviction and sentence has been litigated and upheld throughout the state and federal court systems. See id. at 1306. On November 29, 2005, the Governor of Florida signed a death warrant setting Rutherford's execution for the period of January 30 – February 6, 2006. The warrant recited that the warden had chosen 6:00 p.m on Tuesday, January 31, 2006 as the time and date of execution.

At 7:00 p.m. on Friday, January 27, 2006 Rutherford filed the underlying 42 U.S.C. § 1983 lawsuit to challenge the three-drug protocol Florida has been using since 2000 to carry out executions by lethal injection. Rutherford's lawsuit came two months after his execution date had been set, and just two week days before his scheduled execution. See Rutherford I, 438 F.3d at 1090 n.2. The district court dismissed Rutherford's complaint and denied his motion for stay of execution on January 28. Two days later, we affirmed the district court's decision

and denied Rutherford's motion for a stay. Id. at 1089–92.[1] At 5:40 p.m. the next day, which was the scheduled date of the execution, the Supreme Court granted a stay of execution pending disposition of the certiorari petition Rutherford had filed earlier that day. Rutherford v. Crosby, 546 U.S. ___, 126 S. Ct. 1191 (2006).

On June 19, 2006 the Supreme Court granted certiorari, vacated our Rutherford I decision, and remanded for further consideration in light of Hill v. McDonough, 126 S. Ct. 2096 (2006), which had been decided in the interim. Rutherford v. McDonough, 126 S. Ct. 2915 (2006). By letter dated that same day, the Supreme Court Clerk formally notified our Clerk of the order and of the fact that pursuant to Supreme Court Rule 45 the Supreme Court's judgment or mandate would not issue in the matter for at least twenty-five more days, and that issuance of it would be further delayed if a timely petition for rehearing were filed in the Supreme Court. Nonetheless, because we wanted to move along our consideration of the matter, without waiting for the official judgment or mandate we instructed the attorneys on June 30 to supplementally brief the question of what this Court should do in light of the Hill decision when this case officially got back before us.

---

[1]On that same day we also denied an application for leave to file a successive petition and for a stay that Rutherford had filed the day before. In re: Rutherford, 437 F.3d 1125 (11th Cir. 2006).

3

The schedule we set provided that Rutherford's opening brief would be due within 20 days from June 30, the date of our instructions; the State's answer brief would be due within 14 days from receipt of Rutherford's; and he then would have 7 days from receipt of the State's brief to file a reply. Rutherford filed his opening brief on the last possible day under the schedule; the State filed its answer brief several days early; and Rutherford did not file his reply brief when it was due. Instead, the day Rutherford's reply brief was due we received a motion for a thirty-day extension. One of the reasons his attorney gave for needing the extension was that she had taken an eight-day vacation in the midst of the briefing schedule. We denied her request for a 30-day extension but gave her one of twenty-three days, which resulted in her having a total of thirty days from receipt of the State's brief to file Rutherford's reply brief. Rutherford's attorney waited until the last day of that extended period to file the brief, which resulted in completion of the supplemental briefing being delayed until September 1. (In the meantime, we had received the judgment or mandate of the Supreme Court on July 24.)

On September 22, 2006, the Governor of the State of Florida rescheduled Rutherford's execution for the period from October 16 through October 23, 2006. In doing so the Governor noted that the warden had chosen October 18 at 6:00

4

p.m. as the specific date and time for the execution. No one informed this Court or its Clerk of that development until September 25, which is the date that Rutherford filed a mandamus petition in the Supreme Court and provided our Clerk's Office with a copy of it. The mandamus petition asked the Supreme Court to expeditiously order this Court to remand this case to the district court. The request came despite the fact that Rutherford had never asked this Court to expedite its consideration of the case and his own attorney had delayed the completion of briefing and submission of the case to us for decision. Among other things, the mandamus petition she filed accuses this Court of "sit[ting] upon a capital case remanded to it," and charges that "[t]he Eleventh Circuit and the Florida Attorney General have been the architects of the trap being set to ensnare Mr. Rutherford." The mandamus petition does not disclose that the attorney who penned those allegations took a vacation during the briefing schedule, leading to a delay in submission of the case to us for decision.

In any event, the case having been submitted to us for decision, we turn to a discussion of the issues presented by the Supreme Court's remand.

**B.**

5

The district court dismissed on two grounds Rutherford's 42 U.S.C. § 1983 lawsuit challenging Florida's three-drug lethal injection protocol. One ground was that our circuit law at the time required that this type of challenge be brought in a 28 U.S.C. § 2254 proceeding and comply with the restrictions on second or successive habeas petitions set out in § 2244(b). See Hill v. Crosby, 437 F.3d 1084 (11th Cir. 2006), rev'd sub nom., Hill v. McDonough, 126 S. Ct. 2096 (2006); Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir. 2004). Because Rutherford could not meet the requirements for filing a second or successive habeas petition, we affirmed the district court's judgment dismissing his action on that basis. Rutherford I, 438 F.3d at 1089. That basis for our decision is no longer valid in light of the Supreme Court's Hill decision.

There was, however, a second ground for the dismissal. The district court also dismissed Rutherford's lawsuit on the alternative ground that he could and should have brought it earlier. Rutherford I, at 1101–03 (appendix containing district court opinion). After discussing that ground at some length, we affirmed on the basis of it, as well. Id. at 1090–93. We will not repeat here all that we said there. Suffice it to say that, as the district court found, Rutherford did unnecessarily delay bringing this claim. He deliberately waited until the last few days before his execution to file what he could have filed many months, if not

6

years, earlier. He could have brought the claim in plenty of time to permit full consideration of it without any need to stay the execution order that was finally entered in the case. Id.

We explained in our prior opinion that because of the alternative holding Rutherford would lose even if the Supreme Court in Hill knocked the first prop out of our decision, which is exactly what it did. Rutherford I, at 1093 ("[E]ven if the Supreme Court decides in the Hill case to overturn our Hill and Robinson decisions and holds that this type of claim is cognizable in a § 1983 proceeding, Rutherford still will not be entitled to any equitable relief because of the district court's independently adequate alternative ground for dismissing his complaint, which we are affirming in this opinion. Neither of the two questions on which certiorari was granted in Hill touch on that alternative ground."). We are as convinced of that conclusion now as we were then, if not more so.

Nothing in the Supreme Court's Hill opinion conflicts with our conclusion about how the equitable principles play out in this case, and there is much in that opinion to support our conclusion. Part III of the Hill opinion recognizes that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence," and the opinion states that nothing about the Hill decision should be read to diminish that interest or prevent federal courts from

7

protecting it. 126 S. Ct. at 2104. The Supreme Court reiterated in Hill what it said in Nelson v. Campbell, 541 U.S. 637, 649–50, 124 S. Ct. 2117, 2125–26 (2004), about a stay of execution being an equitable remedy, not available as a matter of right, and about how federal courts considering granting a stay must be "sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Hill, 126 S. Ct. at 2104. It also instructed us that "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.' " Id. (quoting Nelson, 541 U.S. at 650, 124 S. Ct. at 2126).

At the time the Hill decision was announced, a number of federal courts had exercised their equitable powers to dismiss this type of lawsuit on grounds that the claim about the lethal injection procedures and protocol was too speculative or had been filed too late. Hill, 126 S. Ct. at 2104 (citing Hicks v. Taft, 431 F.3d 916 (6th Cir. 2005); White v. Johnson, 429 F.3d 572 (5th Cir. 2005); Boyd v. Beck, 404 F. Supp. 2d 879 (E.D.N.C. 2005)). While not passing on the decisions in those particular cases, the Supreme Court did point to them and conclude that the problem they addressed is significant, as would be the problem of piecemeal or repetitive litigation in this type of case. Hill, 126 S. Ct. at 2104. The Supreme

8

Court flat out said in its Hill opinion that: "The federal courts can and should protect States from dilatory or speculative suits." Id. If that means anything, it means that we must affirm the district court's dismissal of Rutherford's § 1983 complaint on the alternative ground that he is not entitled to equitable relief because he delayed unnecessarily in bringing the claim, deliberately waiting until the Friday night before the scheduled execution on Tuesday to file, knowing full well that the discovery, evidentiary hearing, and decision on the merits that he demands could not possibly be accomplished in that short period of time.

Our decision to affirm in this case is supported, if not compelled, by the decision of another panel of this Court in the Hill case on remand. In that case, unlike this one, the district court had not reached the issue of whether, if there were jurisdiction to consider the lethal injection claim, relief should be denied on equitable grounds because of the delay in bringing it. The case was remanded to the district court for consideration of that issue. Hill v. McDonough, ___ F.3d ___, No. 06-10621, 2006 WL 2472727, at *1 (11th Cir. Aug. 29, 2006). The district court on remand in Hill reached the same decision that the district court in the present case had reached originally, which is that the relief sought in the § 1983 proceeding was barred on equitable grounds, and dismissed the complaint on that basis. See Hill v. McDonough, ___ F.3d ___, No. 06-14927, 2006 WL

9

2641659, at *1 (11th Cir. Sept. 15, 2006). On appeal, this Court effectively affirmed that decision, treating Hill's motion for a stay of execution as a request for preliminary injunctive relief and denying it. Id. In doing so, we stated that "we dispose of Hill's motion by denying his request for an injunction based upon our independent analysis of the equities." Id. at *2.

In the course of doing so, we referred to "the clear indication from the Supreme Court in this case that we may deny Hill's request if the equities demand that result." Id. We explained that far from having the equities on his side, "Hill was the architect of the very trap from which he now seeks relief." Id. What we said about Hill applies with full force to Rutherford. We pointed out that Hill had filed "his § 1983 complaint four days before his previously scheduled execution date of January 24, 2006." Id. Likewise, Rutherford filed his § 1983 complaint four days before his scheduled execution date of January 31, 2006.

We pointed out in Hill that the petitioner had filed his § 1983 complaint "just after the Florida Supreme Court rejected his application for post-conviction relief on, among other grounds, his challenge to the Florida lethal injection protocol." Id. Likewise, Rutherford filed his § 1983 complaint just after (actually, the same day) the Florida Supreme Court affirmed the denial of his request for post-conviction relief on this ground among others. As we explained in Hill,

10

"assertion of essentially the same lethal injection challenge in the Florida courts reveals that he was aware of the grounds for the claim much earlier than the date on which he actually filed his § 1983 action in federal district court." Id. The same is true here.

> And that is not all. We also explained in our last Hill opinion that:
>
> [W]e need not rely on that inference alone to determine that Hill unreasonably delayed in filing his federal complaint. The Florida Supreme Court considered a challenge to the Florida lethal injection protocols on similar grounds as early as 2000. Sims v. State, 754 So. 2d 657, 666-68 (Fla. 2000). Although it is unclear from the procedural history whether Hill addressed the Sims precedent in his post-conviction proceedings after 2000, the fact remains that, during the pendency of his various collateral challenges, Florida had considered the same type of claim upon which Hill now seeks relief. In light of this context, Hill cannot claim that it was impossible for him to initiate his federal suit any earlier.

Id. (footnote omitted). Again, the same is true here. To the extent that Rutherford contends he should be excused for not filing his claim before the *Lancet* article it

11

is based upon was published, exactly the same could have been said in the Hill case. Besides, as we explained in our earlier decision in this case, the *Lancet* article was published in April 2005 nine months before Rutherford filed his complaint. Rutherford I, 438 F.3d at 1092. This Court concluded in the last Hill opinion that "[i]n light of [petitioner's] actions in this case, which can only be described as dilatory, we join our sister circuits in declining to allow further litigation of a § 1983 case filed essentially on the eve of execution." Hill, 2006 WL 2641659, at *3.

The difference between this case and the Hill case is that no remand to the district court is necessary to see how the district court will decide the equitable issues raised by the last minute nature of the filing, because the district court has already decided those issues in this case. It did so by stating as an alternative basis for dismissing Rutherford's § 1983 complaint that he was not equitably entitled to relief. Rutherford I, at 1102–03 (appendix containing district court opinion).

Rutherford contends that we ought not pay any attention to that alternative holding, because the district court concluded in the same order that it lacked jurisdiction to address the claim. He cites a half dozen decisions holding that if a court lacks subject matter jurisdiction it lacks the power to decide a claim. Of course that's true. But the problem with Rutherford's argument is that the

12

Supreme Court, which traditionally has the last word in these matters, has now emphatically held that district courts do have jurisdiction to entertain this claim in a § 1983 proceeding even where the plaintiff previously had litigated a § 2254 petition. Hill, 126 S. Ct. at 2102. The Supreme Court's Hill decision reduces Rutherford's argument to this proposition: a district court which erroneously concludes that it lacks jurisdiction does lack jurisdiction even if it does not really lack jurisdiction. That proposition is not only contrary to common sense but also is foreclosed by circuit precedent. See M.H.D. v. Westminster Schools, 172 F.3d 797, 802 n.12 (11th Cir. 1999) (if a district court dismisses alternatively on the merits and for lack of subject matter jurisdiction, we may affirm on the merits after concluding that there was jurisdiction); see also IFC Interconsultant, AG v. Safeguard Int'l Partners, 438 F.3d 298 (3d Cir. 2006) (same); Town Stores, Inc. v. Equal Employment Opportunity Comm'n, 708 F.2d 920, 923 (4th Cir. 1983) ("Having concluded that the district court erred in dismissing the action for a lack of jurisdiction, we now must turn to a review of its alternative holding . . . .").

Rutherford also argues that the well-established equitable principles the district court applied in this case, and which the Supreme Court stressed in Part III of its Hill opinion, 126 S. Ct. at 2104, have no relevance here because he is seeking permanent injunctive relief on the merits, not a stay of execution. We

13

rejected that contention in our prior opinion, "agree[ing] with the Fifth Circuit that the last-minute rules of the Supreme Court in <u>Nelson</u> and <u>Gomez</u> [v. United States Dist. Court for N. Dist. Of Cal., 503 U.S. 653, 112 S. Ct. 1652 (1992)] 'were declared by the Court in the context of last-minute § 1983 method of execution challenges as well as last-minute stay requests. The principles enunciated by the [Supreme] Court are equally applicable to all types of equitable relief, including permanent injunctions, sought by inmates facing imminent execution.'" <u>Rutherford I</u>, 438 F.3d at 1092 n.3 (quoting <u>White v. Johnson</u>, 429 F.3d 572, 573–74 (5th Cir. 2005)). So far as we can find, no circuit has held to the contrary. And it is well to remember that in <u>Hill</u> the Supreme Court spoke of federal courts invoking equitable power not merely to deny stays, but "to dismiss suits they saw as speculative or filed too late in the day," and also to address problems of "piecemeal litigation." <u>Hill</u>, 126 S. Ct. at 2104.

In his supplemental briefs Rutherford insists that the circumstances have changed since the district court ruled because at the time he filed those briefs his execution had not been rescheduled. The problem with that approach is two-fold. First, we are not sitting as a court of first resort, deciding what would be the proper result if Rutherford had just filed with us his § 1983 complaint and associated motions. We are reviewing the decision of the district court, which was

entered less than seventy-two hours before the date on which the execution was initially scheduled. Second, the Governor of Florida has now rescheduled Rutherford's execution and a stay of execution would be necessary for Rutherford to seek and obtain the final relief he seeks.

We have carefully considered the views of our dissenting colleague but are unable to agree with them. Because the *Lancet* article was published on April 16, 2005, the dissenting opinion, in its first footnote, concedes that "the factual basis for Rutherford's claim may have been known to him in April of 2005," which was more than nine months before he filed this claim. It was, the dissenting opinion insists, "the legal basis for his claim [that] was not available until January 2006." Id.

But none of the law applicable to this claim changed in January 2006. While the Supreme Court did grant certiorari in the Hill case on January 25, 2006, a grant of certiorari does not change the law. See Ritter v. Thigpen, 828 F.2d 662, 665–66 (11th Cir. 1987); Thomas v. Wainwright, 788 F.2d 684, 689 (11th Cir. 1986). When Rutherford finally filed his claim on Friday night, January 27, 2006, to stop his scheduled execution on Tuesday, January 31, the law in this circuit was the same as it had been during the entire time he was withholding that claim. Circuit law did not change until the Supreme Court issued its Hill decision on June

15

12, 2006. That decision cannot explain or excuse Rutherford's late filing because it was not issued until four and a half months after he had filed.

Nor can we agree with the dissenting opinion's attempted distinction of the Hill case from this one. The two cases, as we have already pointed out, are materially identical insofar as the facts relating to the equitable considerations are concerned. Even though Hill and Rutherford both filed the same claim challenging the same lethal injection protocol in the same state the same number of days before their scheduled executions, which were to occur just one week apart, the dissenting opinion says the two cases are materially different. They are different, in its view, because by persuading the Supreme Court to grant certiorari in his case, while Rutherford laid back, Hill brought about a "fundamental[] change[]" in "the legal landscape"; Rutherford did not. The idea is that because Hill paved the way for Rutherford, it is okay to execute Hill but not Rutherford. It cannot be the law, and it certainly is not equitable, to treat a litigant who does nothing until there is an indication the law may be changed more favorably than one who actually brings about that change in the law. Treating Rutherford more favorably than Hill would turn the incentives upside down and be anything but equitable.

We also disagree with the dissenting opinion's critique of the district court's

16

treatment of the equitable considerations issue. The district court did not "only analyze[] this issue as an afterthought," but carefully considered the applicable law and facts and entered an alternative holding that the relief sought would be denied on equitable grounds. See Rutherford I, 438 F.3d at 1102–03 (appendix containing the district court opinion). The district court did consider the specific facts of this particular case, the central one of which is that Rutherford had unnecessarily delayed in bringing his claim and at the district court level he had "offered no reason for his delay in bringing a § 1983 action until just days before his scheduled execution." Id. at 1102. The district court did apply the proper law, see id. at 1102–03, citing and quoting from the same parts of the Supreme Court's Gomez and Nelson opinions that the Supreme Court itself discussed favorably in Part III of the Hill decision, 126 S. Ct. at 2104. The district court's discussion of the relevant law was no more "an afterthought" than the Supreme Court's discussion of it was in Hill.

Speaking of the effect of federal court litigation on state death sentences, twenty-three years ago Judge Godbold of this Court sagely observed that "[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment." Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 1983). By holding his claim back until there was not enough time to have it adjudicated without a stay of

17

execution, Rutherford used what then-Justice Rehnquist called the "hydraulic pressure" of a last-minute filing, <u>Evans v. Bennett</u>, 440 U.S. 1301, 1307, 99 S. Ct. 1481, 1485 (1979) (Rehnquist, Circuit Justice), to obtain a federal court imposed eight month commutation of his death sentence.  He is not entitled to another one.

Because we affirm the district court's dismissal of Rutherford's § 1983 complaint on equitable grounds, we need not address the additional defenses of collateral estoppel and failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which the State has asserted as alternative bases for affirmance.

AFFIRMED.[2]

---

[2] Last week Rutherford filed an application for a stay of execution pending our decision in this appeal.  We deny that application as moot.

18

WILSON, Circuit Judge, dissenting:

It is now clear that Rutherford is entitled to challenge the method by which Florida seeks to execute him by presenting his claim under 28 U.S.C. § 1983. *See Hill v. McDonough,* 547 U.S. \_\_\_\_, 126 S. Ct. 2096, 2101–04, 165 L. Ed. 2d 44 (2006). The Supreme Court remanded Rutherford's case back to us for reconsideration in light of its decision in *Hill. Rutherford v. McDonough*, 126 S. Ct. 2915, 165 L. Ed. 2d 914 (2006) (mem.). Pursuant to the remand, the majority agrees with the district court's alternative ruling that Rutherford's § 1983 claim should not be heard because he should have brought it earlier. I disagree. I continue to believe, as I noted in my earlier dissent, that the district court abused its discretion by concluding that even if Rutherford's § 1983 claim were cognizable, his delay in bringing the claim precluded equitable relief. *Rutherford v. Crosby*, 438 F.3d 1087, 1097–98 (11th Cir. 2006) (Wilson, J., dissenting) (hereinafter *Rutherford I*). Because the factual basis for Rutherford's claim only recently came to light and because the legal basis for his claim was not in place until six days before his scheduled execution, he did not unnecessarily delay in

19

bringing his § 1983 action.[1]

The district court's determination that Rutherford unreasonably delayed the filing of his claim was, in essence, an alternative basis for dismissing his case. There was no semblance of a proper discussion or balancing of the equities of Rutherford's claim. The court did not apply the appropriate standard for a stay or injunction under § 1983. Conspicuously absent from the district court's order is any discussion of the following four factors: (1) whether there is a substantial likelihood of success on the merits; (2) whether the requested action is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the stay or injunction would inflict upon the non-movant; and (4) whether the requested action would serve the public interest. *See Seigel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam). The district court obviously did not feel the need to consider these four factors because it believed that Rutherford's "claim

---

[1] The majority asserts that Rutherford was aware of the factual grounds for his claim as early as 2000 when the state of Florida instituted lethal injection as a method of execution. That year, the Florida Supreme Court evaluated the constitutionality of Florida's lethal injection protocols. *See Sims v. State*, 754 So. 2d 657 (Fla. 2000). The petitioner in *Sims*, however, centered his argument on the pain and suffering that could occur if execution procedures were not followed. *Id.* at 668. In this case, Rutherford alleges that even if carried out as planned, the execution methods constitute cruel and unusual punishment. Rutherford bases his claim on recent research published in a medical journal detailing the effects of the chemicals in lethal injection. *See* Leonidas G. Koniaris, et al., *Inadequate Anaesthesia in Lethal Injection for Execution*, 365 THE LANCET 1412 (Apr. 16, 2005). This research indicates that inmates may feel the suffering of suffocation, the burning through the veins, and the pain of a heart attack due to inadequate anaesthesia. *Id.* Though the factual basis for Rutherford's claim may have been known to him in April of 2005, the legal basis for his claim was not available until January 2006.

20

and request for relief [wa]s the functional equivalent of a successive habeas corpus petition." *Rutherford I*, 438 F.3d at 1102 (reprinting district court order as appendix). We have learned from *Hill* that that belief was incorrect. 126 S. Ct. at 2101–04.

Without weighing the four factors, the district court erroneously concluded that Rutherford unnecessarily delayed in bringing his claim, and thus deemed a stay inappropriate. A "strong equitable presumption against the grant of a stay" is appropriate only when "a claim could have been brought at such a time as to allow consideration of the merits without the requiring of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650, 124 S. Ct. 2117, 2126, 158 L. Ed. 2d 924 (2004). Here, there would have been little point in Rutherford bringing his claim any earlier than he did. Prior to the Supreme Court's decision in *Hill*, our precedent in *Robinson v. Crosby*, 358 F.3d 1281 (11th Cir. 2004), would have required a district court to treat Rutherford's § 1983 claim as a successive habeas corpus petition. *See id.* at 1284. Thus, based on our prior precedent which has now been overruled, the district court would have been correct to summarily dismiss it for lack of jurisdiction. *See id.* It was not until the Supreme Court's grant of certiorari in *Hill* that Rutherford had reason to believe that his claim would be heard. Rutherford filed his § 1983 claim on January 27, 2006, two days after the Supreme Court

21

granted certiorari in *Hill*. I see nothing in the record to suggest, as the majority opines, that Rutherford "deliberately waited" to file his claim days before his scheduled execution. Thus, the district court abused its discretion in applying a "strong equitable presumption" against a stay. Furthermore, the district court's order only analyzed this issue as an afterthought on the premise that the court's first ground would be upheld.

The majority affirms the district court's dismissal of Rutherford's § 1983 action in an effort to "protect states from dilatory or speculative suits." *Hill*, 126 S. Ct. at 2104. The majority concludes that a remand is unnecessary because the district court already determined that Rutherford's suit was dilatory. I do not read *Hill* as giving license to the lower federal courts "to overlook all other considerations that are called for in equity, which, after all, should be a recourse to principles of justice and fairness to correct or supplement the law as applied to particular circumstances." *Brown v. Livingston*, 457 F.3d 390, 392 (5th Cir. 2006) (Dennis, J., dissenting). Rather, "equity in cases of this nature requires courts to consider the particular circumstances of each case and to examine them for whether or not the challenge has been brought dilatorily or for improper purposes . . . , and, if not, whether it should be allowed to proceed." *Id.* The district court did not consider Rutherford's particular circumstances.

The majority also argues that its decision to affirm is compelled by the result in the *Hill* case on remand. *Hill v. McDonough*, No. 06-14927, 2006 WL 2641659, (11th Cir. Sept. 15, 2006). Hill filed his § 1983 claim four days before his execution with full knowledge that under this Circuit's precedent, his claim would be dismissed as a successive habeas petition. *See Robinson*, 358 F.3d at 1284. In fact, the district court dismissed Hill's claim outright for lack of jurisdiction, holding that Hill's action was the functional equivalent of a successive petition for a writ of habeas corpus filed without leave and, thus, ran afoul of 28 U.S.C. § 2244(b). *Hill v. Crosby*, No. 4:06-CV-032-SPM, 2006 WL 167585, at *2–3 (N.D. Fla. Jan. 21, 2006). Following our precedent in *Robinson*, 358 F.3d 128, and *In re Provenzano*, 215 F.3d 1233 (11th Cir. 2000), we summarily affirmed the district court and denied Hill's application for a stay of his execution pending appeal. *Hill v. Crosby*, 437 F.3d 1084, 1085 (11th Cir. 2006) (per curiam). Against the odds, the U.S. Supreme Court granted certiorari in Hill's case. *Hill v. Crosby*, 546 U.S. __, 126 S. Ct. 1189, 1190, 163 L. Ed. 2d 1144 (2006) (mem.).

Hill's case is materially different from Rutherford's. Hill filed a highly speculative suit as a last ditch effort to stall his execution. Nothing in our circuit precedent, or Supreme Court precedent, provided a basis for a § 1983 challenge to

23

Hill's method of execution. On the other hand, when Rutherford filed his § 1983 claim, the legal landscape had fundamentally changed. A grant of certiorari by the Supreme Court, obviously, does not change our Circuit law, but it does call that law into question. Only after the Supreme Court's grant of certiorari in *Hill,* which presented the same issues Rutherford faced, did Rutherford have reason to believe that his claim would be heard. The majority suggests that it "cannot be the law" that Rutherford could benefit from precedent established by Hill's efforts. Again, I disagree. Litigants benefit from the efforts of prior litigants who shape the law every day. That is precisely why the Supreme Court remanded this case back to us for reconsideration – because Hill forged new precedent.

Nothing in the record suggests that Rutherford filed his claim solely in an attempt to delay his impending execution. In fact, the record compels the opposite conclusion. Since Rutherford filed his § 1983 claim, he has vigorously pursued that claim and urged the courts at all stages to give him an evidentiary hearing on the merits. For example, Rutherford urged us to remand his case to the district court post-*Hill* for further proceedings on the merits despite the fact that no death warrant was pending and his execution was not imminent. Furthermore, once his second death warrant had been signed and his execution date set, he petitioned the U.S. Supreme Court for a writ of mandamus in an effort to compel us to remand

24

his case to the district court for a hearing. These circumstances contradict the majority's assertion that his § 1983 claim is merely as a delay tactic and instead demonstrate that Rutherford has sought and continues to seek a full and fair hearing on the merits of his constitutional challenge to Florida's lethal injection protocol. I am simply not persuaded by the view of the majority that Rutherford's sole intent is to buy more time on death row, rather than to force the State to execute him in compliance with the Constitution.

Certainly, the State and its victims have an "important interest in the timely enforcement of a sentence," but this interest must be balanced against the constitutional right of a death row inmate to be executed in a manner consistent with the requirements of the Constitution. Recent developments in medical research have called into question the degree of pain and suffering caused by the method of lethal injection some states, including Florida, use. *See* Leonidas G. Koniaris et al., *Inadequate Anaesthesia in Lethal Injection for Execution*, 365 THE LANCET 1412 (Apr. 16, 2005). To date, most lower courts have avoided squarely addressing whether execution by this three-drug protocol violates the Eighth Amendment, thus preventing review by the United States Supreme Court. *See, e.g.*, *Hill*, 2006 WL 2641659; *Robinson*, 358 F.3d 1281; *Brown v. Crawford*, 408 F.3d 1027 (8th Cir. 2005) (per curiam); *Bieghler v. State*, 839 N.E.2d 691

(Ind. 2005). *But see Walker v. Johnson*, No. 1:05-CV-934 CMH TRJ, 2006 WL 2619857 (E.D. Va. Sept. 11, 2006) (dismissing inmate's § 1983 claim which relied on risks of deviation from execution protocol).

Rutherford does not challenge the validity of his sentence, rather the method in which the State seeks to carry it out. Rutherford's challenge, even if successful, does not foreclose his execution. He will be put to death for his crime. But, because Rutherford presents a legitimate claim that the lethal injection protocol that awaits him may constitute cruel and unusual punishment, which the Eighth Amendment forbids, and because the district court failed to engage in a full and proper analysis of the equities in Rutherford's case, I would reverse the district court's decision and remand for a hearing on the merits of his § 1983 claim.[2]

---

[2] A court in the Northern District of California is currently hearing expert testimony regarding a challenge to California's lethal injection protocols, which are materially similar to Florida's procedures. *Morales v. Woodford*, No. C-06-219-JF-RS (N.D. Cal. 2006). Rutherford deserves the same opportunity. Consequently, I would grant Rutherford's Application for a Stay of Execution, permitting him to return to the district court for a hearing on the merits of his § 1983 claim.