[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10022

_____

District Court Docket No. 08-02212-CV-SDM-MAP

WAYNE TOMPKINS,

                                                    Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF
CORRECTIONS, ATTORNEY
GENERAL, STATE OF FLORIDA,

                                                    Respondents-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(February 9, 2009)

Before DUBINA, CARNES, and HULL, Circuit Judges.

PER CURIAM:

Wayne Tompkins is on Florida's death row for the sexual battery and murder of a fifteen year old girl more than a quarter of a century ago. Nine years ago we affirmed the district court's denial of Tompkins' first 28 U.S.C. § 2254 petition for habeas relief. Tompkins v. Moore, 193 F.3d 1327, 1342 (11th Cir. 1999). The facts of the murder, the evidence against Tompkins, and some of the long procedural history of the case can be found in our earlier opinion and in Tompkins v. State, 994 So. 2d 1072 (Fla. 2008), and Tompkins v. State, 502 So. 2d 415 (Fla. 1986).

On November 4, 2008, Tompkins filed another § 2254 petition for a writ of habeas corpus in the district court. That petition included: a Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197 (1977), claim about ex parte communication between the sentencing judge and prosecutor; a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972), claim; a claim that execution after such a long delay would violate Tompkins' constitutional rights; and a claim involving lethal injection procedures. The district court dismissed the petition because Tompkins had failed to obtain from this Court a § 2244(b)(3) order authorizing the district court to consider a second or successive habeas petition. Tompkins filed a notice of appeal from that dismissal, which the district court construed as a motion for a certificate of

2

appealability (COA) and denied.   He has now filed an application for a COA with this Court.

Section 2244(b)(3)(A) requires a district court to dismiss for lack of jurisdiction a second or successive petition for a writ of habeas corpus unless the petitioner has obtained an order authorizing the district court to consider it.  See Williams v.  Chatman, 510 F.3d 1290, 1295 (11th Cir. 2007).  The only reason Tompkins offers for why the clear statutory command of § 2244(b)(3)(A) does not apply to his habeas petition is an argument that because of the decision in Panetti v. Quarterman, 551 U.S. ___, 127 S. Ct. 2842 (2007), his petition is not really a second or successive one.

In Panetti the Supreme Court held that a petitioner's Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595 (1986), claim of incompetency to be executed because of his mental condition at the time of the scheduled execution is not one that is required to be brought in an initial habeas petition on pain of being treated as a second or successive petition.  Panetti, 127 S. Ct. at 2855 ("The statutory bar on 'second or successive' applications does not apply to a Ford claim brought in an application filed when the claim is first ripe.").  Tompkins does not have a Ford claim, but he argues that the Panetti decision applies to all of his claims anyway.

3

The Panetti case involved only a Ford claim, and the Court was careful to limit its holding to Ford claims.  See id. at 2853 (referring to "the unusual posture presented here:  a § 2254 application raising a Ford-based incompetency claim filed as soon as that claim is ripe").   The reason the Court was careful to limit its holding is that a Ford claim is different from most other types of habeas claims.   It is different because "Ford-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition."  Id. at 2852.

Unlike a Ford claim, the Gardner, Brady, and Giglio claims Tompkins wants to raise are claims that can be and routinely are raised in initial habeas petitions. The violation of constitutional rights asserted in these kinds of claims occur, if at all, at trial or sentencing and are ripe for inclusion in a first petition.   Insofar as Tompkins is seeking to raise those three types of claims, this is "the usual case [where] a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar."  Panetti, 127 S. Ct. at 2855.

Cutting and pasting language from the Panetti opinion and contorting that language's meaning, Tompkins would have us hold that any claim based on new evidence is not "ripe" for presentation until the evidence is discovered, even if that discovery comes years after the initial habeas petition is filed.   That is not what

4

the Supreme Court in <u>Panetti</u> meant by "ripe." Mental competency to be executed is measured at the time of execution, not years before then. A claim that a death row inmate is not mentally competent means nothing unless the time for execution is drawing nigh. <u>See</u> <u>id.</u> at 2854 (explaining that it is not possible to resolve a petitioner's <u>Ford</u> claim "before execution is imminent"). It is not ripe years before the time of execution because mental conditions of prisoners vary over time. <u>See</u> <u>id</u>. at 2852. The reason the <u>Ford</u> claim was not ripe at the time of the first petition in <u>Panetti</u> is not that evidence of an existing or past fact had not been uncovered at that time. Instead, the reason it was unripe was that no <u>Ford</u> claim is ever ripe at the time of the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution— do not and cannot exist when the execution is years away. (How many years can pass between the filing of the first habeas petition and the scheduled execution is illustrated in this case where the first petition was filed twenty years ago.)

The stringent requirements that a petitioner must meet before being allowed to assert a claim in a second habeas petition because of newly discovered facts about events that occurred before the filing of the first petition are contained in § 2244(b)(2)(B). Tompkins does not contend that he can satisfy those statutory requirements. And even if he wanted to make an attempt at satisfying them, the

5

proper procedure would be to obtain from this Court an order authorizing the district court to consider the second or successive petition. See § 2244(b)(3)(A). He has not done that.

For all of these reasons, we conclude that reasonable jurists could not disagree about whether the district court erred in dismissing Tompkins' habeas petition insofar as it included the Gardner, Brady, and Giglio claims. See Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation marks and alteration omitted).

The best argument Tompkins has that one of his claims was unripe in the Panetti sense at the time of his first petition involves his claim that the delay in carrying out his death sentence renders the sentence unconstitutional. Because the factual predicate for such a claim would be the time between sentence and execution, this type of claim arguably does not become ripe until the date of execution draws near. Or to pin the point to the facts of this case, the unripeness argument is that the delay of twenty-four years (between the sentence and the

6

present habeas petition) is excessive enough to violate the Eighth Amendment while a delay of four years (between the sentence and the first habeas petition) clearly was not. Reasonable jurists could at least debate whether the claim was unripe at the time of the first petition and thus the present petition is not a second or successive one insofar as that one claim is concerned.

This does not mean that Tompkins is entitled to a COA on his excessive delay claim. We have squarely rejected such a claim on the merits. See Thompson v. Sec'y for Dep't of Corr., 517 F.3d 1279, 1284 (11th Cir. 2008) ("Especially given the total absence of Supreme Court precedent that a prolonged stay on death row violates the Eighth Amendment guarantee against cruel and unusual punishment, we conclude that execution following a 31-year term of imprisonment is not in itself a constitutional violation."). And, as we have also held before in denying a COA, if a habeas petitioner's contention is "foreclosed by a binding decision—one from the Supreme Court or this Court that is on point—the attempted appeal does not present a substantial question, because reasonable jurists will follow controlling law." Gordon v. Sec'y, Dept. of Corr., 479 F.3d 1299, 1300 (11th Cir. 2007). It follows that Tompkins is not entitled to a COA as to his excessive delay claim.

That brings us to Tompkins' claim that Florida's lethal injection procedures violate the Eighth Amendment. His argument against this being treated as a second or successive petition claim is that it was not ripe at the time he filed his first habeas petition in 1989 because the state did not use that method of execution at that time. That is true, but Florida adopted lethal injection as a method of execution in 2000, Henyard v. Sec'y, DOC, 543 F.3d 644, 647 (11th Cir. 2008) ("On January 14, 2000, Florida adopted lethal injection as a method of execution."), and Tompkins could have filed a 42 U.S.C. § 1983 lawsuit challenging the method and procedures at any time during the eight years since then. A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures. See Hill v. McDonough, 547 U.S. 573, 579–83, 126 S. Ct. 2096, 2101–04 (2006); see also Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir. 2007) (recognizing that before Hill we required "litigants raising method-of-execution challenges to bring them in second or successive habeas petitions instead of § 1983 actions"). Not only that, but binding precedent establishes that laches bars Tompkins' lethal injection claim. See Crowe v. Donald, 528 F.3d 1290, 1293–94 (11th Cir. 2008) (concluding that Crowe, who had delayed filing his complaint until after he brought challenges to the method of lethal injection in two petitions for writs of habeas corpus, had delayed too long);

8

Rutherford v. McDonough, 466 F.3d 970, 974 (11th Cir. 2006) (affirming the district court's dismissal of Rutherford's § 1983 complaint because he "delayed unnecessarily in bringing the claim"). Reasonable jurists could not disagree about whether the district court erred in dismissing Tompkins' habeas petition insofar as it included the lethal injection procedures claim.

The application for a certificate of appealability is DENIED.